583 F.2d 91
 James JORDAN, a minor child, by his mother, Sarah Jordan, on
behalf of himself and all others similarly situated, Timothy
Barnes, a minor child, by his mother, Shirley Stonewall, on
behalf of himself and all others similarly situated, and the
Erie Human Relations Commission and Commonwealth of
Pennsylvania, Intervenor,
v.
The SCHOOL DISTRICT OF the CITY OF ERIE, PENNSYLVANIA and
William Gross, President, Erie Education Association,
Pennsylvania State Education Association, National Education
Association and Robert J. LaPenna and John Holter.
Appeal of James JORDAN et al., Plaintiffs and
representatives of the class of Plaintiffs, and
Intervenor-Plaintiffs Commonwealth of
Pennsylvania, in No. 77-2137.
Appeal of ERIE EDUCATION ASSOCIATION, in No. 77-2138.
 Nos. 77-2137, 77-2138.
 United States Court of Appeals,
Third Circuit.
 Argued May 1, 1978.
Decided Aug. 21, 1978.
 
 George Levin, Shamp, Levin, Arduini & Hain, Erie, Pa., for appellant in No. 77-2138 and as cross-appellee in No. 77-2137.
 Robert P. Kane, Atty. Gen., Thomas F. Halloran, Asst. Atty. Gen., Pittsburgh, Pa., for appellees in No. 77-2138 and as cross-appellants in No. 77-2137.
 John W. Beatty, Sol., School District of the City of Erie, Erie, Pa., for appellee, School District of the City of Erie, Pa.
 Joseph P. Burt, Legal Services of Northwestern Pa., Erie, Pa., for James Jordan, et al.
 Before SEITZ, Chief Judge, VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 These appeals present questions concerning the due process rights of students in the public schools who are temporarily removed and transferred because of behavioral problems from their regularly assigned school to another school designed to meet the needs of such students. This is the second occasion for us to consider issues arising from a dispute over disciplinary procedures to be used in the public schools in the City of Erie, Pennsylvania. Because the details of the protracted litigation in this case are set out at length in our earlier opinion, Jordan v. School District of City of Erie, Pa., 548 F.2d 117 (3d Cir. 1977), it will suffice here to relate merely the heart of the matter.
 
 
 2
 In early 1973, plaintiffs commenced this action on their own behalf and on behalf of similarly situated students in the Erie School District against the Board of Education of the City of Erie ("the Board") and the Erie Education Association ("the Association"), an organization of school teachers in the Erie School District. In essence, plaintiffs alleged that the school district's disciplinary procedures, involving the transfer of students from their regularly assigned schools to the New Directions Center, a facility designed especially to meet the needs of disruptive students, deprived students of their due process rights under the fourteenth amendment. After considerable pre-trial maneuvers, the parties (including the Commonwealth of Pennsylvania as intervenor-plaintiff) succeeded in negotiating a consent decree, approved by the district court on February 5, 1974. Briefly, the consent decree provided for notice of the proposed disciplinary action to the student and his parents, and for informal and formal hearings concerning the decision to transfer.[1]
 
 
 3
 Over a year later, in April 1975, plaintiffs and the Commonwealth, alleging numerous violations of the consent decree, filed a joint Motion for Contempt against the Board and the Association. In July 1975 the Association similarly moved the court to impose sanctions on the School Board. After consideration of the motions, the district court found the Board in contempt for failure to comply with the consent decree.
 
 
 4
 In December 1975, the district court held hearings, in response to a motion by the Board, to modify the consent decree in light of the Supreme Court's then recent decision in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The district court ruled that it had no power to unilaterally modify the consent decree, but would vacate it unless the parties would agree to a modification. The parties failed to reach an agreement, and the court's order vacating the consent decree was appealed to this court in Jordan v. School District of City of Erie, Pa., supra. We reversed, concluding that a district court has the power to modify a decree "if a change in the law alters the operative conditions affected by the decree." 548 F.2d at 122. Therefore, we directed the district court to "effect such modification of the consent decree, if any" as required by Goss v. Lopez. Id.
 
 
 5
 Upon remand, the district court requested further argument concerning modification of the consent decree, and directed the parties to submit proposed modifications. At a hearing held on April 7, 1977, the class action plaintiffs and the Commonwealth argued in favor of modification, suggesting the addition of the following three paragraphs:
 
 
 6
 32. Notwithstanding anything to the contrary contained herein, no student shall be removed from class for disciplinary reasons until after notice of proposed action and basis therefor and opportunity to explain his version of the occurrence or occurrences at the informal meeting with the building principal as provided in paragraphs 2 and 3 or if in the judgment of the classroom teacher and the principal a student's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process, the student may be immediately removed from the class or from the school. In such cases, the procedures for notice and informal meeting with the principal shall be immediately implemented so that the informal meeting with the principal shall be held no later than three school days following the alleged occurrence forming the basis for the procedures.
 
 
 7
 33. Notwithstanding anything to the contrary herein, students who are recommended to be transferred out of the New Directions Center by the Principal of the New Directions Center shall be placed in his or her regular school without the necessity of further hearings provided the student has attended at least six weeks at the New Directions Center and the principal of the New Directions Center or a staff member designated by him has discussed the student's problems with the teacher and disciplinary committee at the time of his return to his regular school stating the reasons for the action.
 
 
 8
 34. When a student who has attended the New Directions Center for at least six weeks desires to be transferred out of the New Directions Center contrary to the wishes of the principal of the New Directions Center, the procedure outlined herein for Hearing I and Hearing II shall apply and be put into immediate effect upon receipt of written notice from the student or his or her representative. Under no circumstances shall a student be forced to attend the New Directions Center for a consecutive period longer than one full year.
 
 
 9
 The district court entered a final order on June 22, 1977, modifying the decree by adding paragraph 32, as suggested by plaintiffs, but excluding their suggested paragraphs 33 and 34.
 
 
 10
 The Association appeals contending that the consent decree as originally approved need not have been modified in light of Goss v. Lopez. Plaintiffs and the Commonwealth argue in favor of including paragraph 32, and cross-appeal the district court's exclusion of paragraphs 33 and 34.
 
 
 11
 We reverse in part and affirm in part.
 
 
 12
 The threshold question before us is whether the principles of Goss v. Lopez require any modification of the consent decree, as originally drafted. To answer that question, we will first examine the language of Goss, and then we will analyze the provisions of the consent decree to determine the scope of Goss 's applicability, and to measure the extent of the rights provided against the Goss yardstick.
 
 
 13
 Goss v. Lopez involved an Ohio statute which empowered the principals of Ohio public schools to suspend a student for misconduct for up to ten days, provided that notice is given the student's parents within 24 hours, stating the reasons for the action. Plaintiffs, nine public high school students who had been suspended pursuant to this statute, brought a class action against the Columbus, Ohio, Board of Education, seeking, Inter alia, a declaration that the Ohio statute permitting such suspensions was unconstitutional because it empowered school officials to deprive students of their right to an education without a hearing in violation of the due process guarantees of the fourteenth amendment. A three-judge federal court held that plaintiffs were denied due process of law because they were suspended without a hearing either prior to suspension or reasonably soon thereafter.
 
 
 14
 The Supreme Court affirmed, concluding that students faced with suspension from a public school have property and liberty interests that qualify for protection under the fourteenth amendment. The Court reasoned that although "Ohio may not be constitutionally obligated to establish and maintain a public school system," Ohio's statutorial grant to students of the right to a public education created a property interest in that education which could not be withdrawn without adherence to minimum standards of due process. 419 U.S. at 573-74, 95 S.Ct. at 736. Furthermore, the Court noted that the possible damage to a student's reputation that could flow from suspension based on charges of misconduct, E. g., interfering with later educational and employment opportunities, implicated fourteenth amendment protection of liberty interests: "It is apparent that the claimed right of the State to determine unilaterally and without process whether . . . misconduct has occurred immediately collides with the requirements of the Constitution." 419 U.S. at 575, 95 S.Ct. at 736. Finally, the Court held that neither the property interest in education temporarily denied nor the liberty interest in reputation were so De minimis as not to merit constitutional protection, reasoning, "the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child." 419 U.S. at 576, 95 S.Ct. at 737.
 
 
 15
 In prescribing just how much process a student facing suspension is due, the Court held that, "the student (must) be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581, 95 S.Ct. at 740. The Court found no need to require a formal hearing, determining that "an informal give-and-take between student and disciplinarian" Id. at 584, 95 S.Ct. at 741, would be sufficient to guard against unjustified disciplinary action. As for the timing of the rudimentary hearing, the Court indicated that, ordinarily, hearings should precede a student's removal from school. The Court recognized, however, that:
 
 
 16
 there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable . . . Id. at 582, 95 S.Ct. at 740.
 
 
 17
 Under Article V(H) of the Master Contract, entered into between the School District and the Association, "the principal responsibility for maintaining discipline remains with the teacher." The same contractual provision empowers teachers to remove disruptive students from the regular classroom or school when, "in the professional judgment of the teacher, normal corrective measures have been ineffective in bringing about satisfactory improvement." In order to provide due process for students transferred out of the school for disciplinary reasons, the parties developed procedures which were ultimately embodied in the consent decree.[2]
 
 
 18
 Under the original consent decree, transfers for disciplinary purposes may be accomplished only after prior notice and hearing, except in special situations when students are disruptive and, in the professional judgment of the teacher, normal corrective measures are ineffective. In the event a student is removed from a required class, the consent decree provides that, if there is no similar required class within the school building, the removal should be deemed a recommendation for transfer and thereupon the procedures provided in the consent decree shall apply, including notice, the right to an informal meeting, and formal hearings. See appendix, infra, introductory paragraph.
 
 
 19
 The district court held that the failure of the consent decree to provide specifically for notice and an opportunity for explanation prior to removal from class for disciplinary reasons or for notice and a rudimentary hearing to follow as soon as practicable for students "whose continuing presence poses continuing danger to persons or property or threatens disruption of the school process" rendered the decree deficient under Goss v. Lopez. It therefore directed that paragraph 32 be added to the consent decree.
 
 
 20
 Paragraph 32 requires that before a teacher can remove a student from class, notice, an explanation of the basis for the removal and an opportunity for the student to offer his version at an informal meeting with the building principal must be given. Only if, in the judgment of both the classroom teacher and the principal, the student's presence proves a continuing danger to persons or property or an ongoing threat of disrupting the academic process, may he be immediately removed from the class or school with the hearing to follow within three days. Thus, the effect of paragraph 32 is to neutralize the ability of a teacher acting alone to remove a disruptive student or one who poses a continuing danger to persons or property unless he or she first gives notice and the opportunity for an informal hearing.
 
 
 21
 The maintenance of "order and reasonable decorum in school buildings and classrooms is a major educational problem, and one which has increased significantly in magnitude in recent years," (footnote omitted). Goss v. Lopez, Id. at 591-92, 95 S.Ct. at 745 (Powell, J. dissenting). The educational training, character-shaping of students and the maintenance of discipline in the classroom depends largely upon the capabilities and talents of the teacher. And the preservation of order in the classroom may depend upon the teacher's ability to cope promptly with a student disciplinary problem. "Events calling for discipline are frequent occurrences and sometimes require immediate, effective action." Goss v. Lopez, Id. at 580, 95 S.Ct. at 739. The Association vigorously contends that the modification effectively removes the teacher from any determination of classroom discipline and destroys any right of the teacher to control the classroom and that the original consent decree adequately complies with Goss v. Lopez. The plaintiffs and the Commonwealth, on the other hand, contend that Goss requires the modification (para. 32) of the decree to allow for an immediate rudimentary hearing and for the principal to play the primary role in the process. As a federal court, our concern is only with the constitutionally protected rights of the parties, not with the operational and educational problems besetting complex public school systems in modern times.
 
 
 22
 The consent decree meets or exceeds in most respects due process rules enunciated by Goss. When a student faces removal from his regularly assigned classroom, and the consequential recommendation for transfer, the consent decree requires the principal to give written notice to both the student and his parents in person or by certified mail detailing the reasons for the proposed transfer. See appendix, Infra, par. 1-4. Furthermore, the provisions of the consent decree provide for an informal meeting between the student, his parents, and the principal before the transfer, as well as two formal hearings at which evidence may be presented and witnesses examined. See appendix, Infra, par. 3-17. In fact, a number of the provisions of the consent decree go far beyond the rudimentary precautions required by Goss. See appendix, par. 6, 8-19, 24. Although there is no provision in the consent decree for notice or a hearing before a disruptive or dangerous student is physically removed from class, Goss indicated none is required as long as such removal is followed by appropriate notice and hearings, as is the case here. See appendix infra introduction.[3]
 
 
 23
 Although the parties to this proceeding appear to be concerned only with removal of disruptive students from a required class, it is possible under the language of the consent decree for a school disciplinarian to remove for disciplinary reasons a non-disruptive student or one whose presence does not pose a continuing danger to persons or property. In such circumstances, remote as they may be, the consent decree does not provide for notice, explanation of the basis for removal, and an opportunity for the student to offer his version of the incident triggering the disciplinary action prior to removal. We therefore direct the district court to add the following language as paragraph 32 to the consent decree:
 
 
 24
 32. Notwithstanding anything to the contrary contained herein, a student whose presence poses no continuing danger to persons or property or an ongoing threat of disrupting the academic process shall not be removed from class for disciplinary reasons until after notice of proposed action and basis therefor and opportunity to explain his version of the occurrence or occurrences at the informal meeting with the building principal as provided in paragraphs 2 and 3.
 
 
 25
 We conclude that the consent decree as thus amended conforms to the due process requirements of Goss, and we are satisfied that the students subject to its disciplinary procedures will receive sufficient due process protection. Inasmuch as paragraphs 33 and 34 are only concerned with retransfers from the special facility to the student's regular classroom, Goss does not extend to these provisions. Because we hold that paragraphs 33 and 34 are not mandated by Goss v. Lopez, and because they involve essentially internal matters of school policy upon which a federal court should hesitate to pass judgment, we need not address their merits.[4]
 
 
 26
 We will modify the order of the district court directing the addition of paragraph 32 as stated by it to the consent decree, and we will affirm the order of the district court excluding paragraphs 33 and 34. Each party will bear his or its own costs in case No. 77-2138. Costs in cross-appeal No. 77-2137 will be taxed in favor of Erie Educational Association, appellee.
 
 APPENDIX
 CONSENT DECREE
 
 27
 And Now, this 5th day of February, 1974, subject to the approval and Order of the Court, it is agreed by the parties hereto that:
 
 
 28
 Whenever it is recommended that a student be transferred from his/her regularly assigned school building to another school building for disciplinary reasons as provided in Article V. (sic) Section H of the 1972-74 Master Contract between the Board of Education of the City of Erie and the Erie Education Association, . . . or whenever a student is removed from a required class and there is no similar required class within that building this shall be deemed to be a recommendation for transfer as provided herein. This shall be done in accordance with the following procedures:
 
 
 29
 1. Notice of the proposed action shall be given in writing to the parent or guardian and student either (a) at a consultation or conference with the parent or guardian or (b) by certified mail to the parent or guardian (addressee only, return receipt requested).
 
 
 30
 2. The notice, signed by the building principal, and forwarded within three (3) school days, shall describe the proposed action in detail, including a clear and full statement of the reasons upon which such transfer is proposed and the proposed new assignment.
 
 
 31
 3. The notice shall inform the parent or guardian and student of his/her right to an informal meeting with the building principal and other professional staff. At such informal meeting the building principal shall furnish a copy of the procedures set forth herein and the principal shall verbally explain to the parent or guardian and student their due process rights described therein.
 
 
 32
 4. The notice shall inform the parent or guardian and student of his/her right to contest the proposed transfer at Hearings (described below) before the proposed transfer takes place.
 
 
 33
 5. If the notice of the proposed action is given to the parent or guardian at a consultation with the parent or guardian and student, the parent or guardian and student may, within five (5) calendar days of the consultation or conference request a hearing by so indicating in writing to the School District.
 
 
 34
 If notice of the proposed action is given by certified mail, the parent or guardian and student must fill in the form requesting a hearing and return the same to the School District within five (5) days of receipt of the notice.
 
 
 35
 6. The parent or guardian and student have a right to a hearing (Hearing I) before an At-Large Committee composed of one administrator and two employees of the School District selected by the Erie Education Association. None of the members of this At-Large Committee shall be from the student's school building. The members of the At-Large Committee shall serve on a rotating basis. The list of administrators who shall serve on the At-Large Committee shall be provided by the School District. The list of employees of the School District who shall serve on the At-Large Committee shall be provided by the Erie Education Association.
 
 
 36
 7. Hearing I shall be scheduled not sooner than three (3) days and not later than ten (10) school days from the receipt of the request for a hearing from the parent or guardian and student.
 
 
 37
 8. All parties or their representatives have a right at Hearing I to present their own evidence including witnesses and to confront and examine any School District official, employee, or agent or any other person giving information relevant to the student's case at the At-Large Committee. Before Hearing I takes place, the parent or guardian shall have the right to examine the student's school records, any tests or reports upon which said transfer is proposed and the names of any School District official, employee, or agent or any other person who will give relevant information to the At-Large Committee at Hearing I.
 
 
 38
 9. No later than five (5) school days after Hearing I, the At-Large Committee, by majority vote, shall render a decision in writing which shall be accompanied by written findings of fact upon which the decision is based. This decision binding on all parties, and a notice of right to appeal shall be sent by certified mail to the parent or guardian and student. In the event the At-Large Committee decides that a transfer is not warranted, the student shall be returned to his regularly scheduled classes within the building.
 
 
 39
 10. The notice of the right to appeal the decision of Hearing I shall inform the parent or guardian and student of his/her right to be represented at Hearing II by any person of his/her choosing, including legal counsel, of his/her right to examine before the hearing the student's school records, any tests or reports upon which the proposed transfer may be based, of his/her right to present evidence and witnesses of his/her own, including expert medical, psychological and educational testimony of his/her rights to confront and cross-examine any School District official, employee, or agent or any other person giving information relevant to the student's case to the hearing examiner.
 
 
 40
 11. The notice of the right to appeal the decision of Hearing I shall also inform the parent or guardian and student of the availability of various organizations, such as Erie County Legal Services, to assist them in connection with Hearing II and provide the address and telephone number of such organizations in the notice.
 
 
 41
 12. Hearing II shall be a de novo hearing.
 
 
 42
 13. The impartial hearing examiner at Hearing II shall be a representative of either the Bureau of Mediation or the American Arbitration Association. Such hearing examiner shall be paid by the School District. The hearing examiner shall be selected from a list of five (5) members, the School District striking one name and the parent or guardian and student or his/her representative striking the next, and continuing in like manner until one name remains.
 
 
 43
 14. Hearing II shall be scheduled not sooner than five (5) days and not later than ten (10) days after the decision of Hearing I is mailed to the parent or guardian and student.
 
 
 44
 15. Before Hearing II, all parties or their representatives shall have the right to examine the student's school records, any tests or reports upon which said transfer is proposed and the names of any School District official, employee, or agent or any other person who will give relevant information to the impartial hearing examiner.
 
 
 45
 16. All parties or their representative shall, at Hearing II, have the right to compel the attendance of and to question any person who has given any information to the School District relevant to the proposed transfer for disciplinary reasons.
 
 
 46
 17. All parties or their representative, shall, at Hearing II have the right to present evidence and testimony, including expert medical, psychological, or educational testimony.
 
 
 47
 18. No later than five (5) days after Hearing II, the hearing examiner shall render a decision in writing which shall be accompanied by written findings of fact upon which the decision is based and which shall be sent by registered mail to the parent or guardian and student, the School District and the Erie Education Association or their respective representative.
 
 
 48
 19. If the decision of the At-Large Committee in Hearing I is that the student is to be transferred, and the student exercises his/her right to appeal to Hearing II, then the student shall be transferred until the hearing examiner at Hearing II renders a final decision.
 
 
 49
 24. A stenographic, transcribed, or taped record of both Hearing I and Hearing II shall be made and shall be available to the parent or guardian and student or his/her representative. Said record must be retained intact by the School District for a period of not less than three (3) years.
 
 
 
 [1]
 The pertinent provisions of the consent decree are set forth in the appendix attached hereto
 
 
 [2]
 The parties and the district court agree that the consent decree does not deal with suspensions and expulsions. The answer of the School District to the complaint specifically denies that the procedure set forth in Article V(H) is applicable to suspension or expulsion of students. At the argument on the proposed modification of the consent decree, counsel for the school district, John W. Beatty, responded to Judge Knox's interrogation as to the scope of the consent decree:
 THE COURT: Let me ask you this there is nothing in this decree that gives the School Board the power to expel a student?
 MR. BEATTY: No, I don't see it covering that area.
 THE COURT: The Principal can suspend for ten days, is that right?
 MR. BEATTY: Yes, sir, I don't see that that is involved with their whole litigation.
 MR. BEATTY: . . . (M)any school students who are disciplinary problems are expelled in a due process hearing but here we have quite an extensive operation in which we try to give them special care. . . .
 THE COURT: Counsel for the Commonwealth, do you concur in Mr. Beatty's position?
 MR. HOLLORAN: Yes, I have a couple of points I would like to mention. I think what Mr. Beatty says is adequate . . . .
 Mr. Levin, Attorney for the Association, also expressed the view that "(w)e are not talking in terms of suspension, we are talking in terms of a transfer."
 In its memorandum of December 31, 1975, vacating the consent decree, the district court also recognized that the consent decree was not dealing with the suspension or expulsion as such "but with disciplinary transfers."
 
 
 [3]
 Under the consent decree, if a disruptive or dangerous student is physically removed from a required class before notice and informal meeting with him and there is no similar required class within that school building, his removal "shall be deemed a recommendation for transfer" to a special education center designed by the Erie School System to aid disruptive students in handling their behavioral and learning problems. The student thereupon becomes entitled to written notice within three school days signed by the principal with detailed reasons for the action and it shall notify the student of his right to an informal meeting with the building principal and the other due process procedures structured in the consent decree for transfer candidates. The temporary removal from the classroom of a disruptive or dangerous student pending his exercise of the due process procedures provided in the consent decree for his protection is merely a part of the pretransfer process from one learning environment to another
 
 
 [4]
 The School Board contends, as an alternative ground for modification, that the disciplinary actions involved here must be taken by the principal, superintendent or the school board, as required by Pennsylvania law, Pa.Stat.Ann. tit. 24, § 13-1318. That statute reads as follows:
 Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent, supervising principal, or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board.
 We agree with the district court that par. 2 and 3 of the consent decree, See appendix, Infra, do provide for action by the principal. Furthermore, this statute does not appear to apply in this case, as its language is framed in terms of suspension and expulsion, not a disciplinary in-system transfer.