615 F.2d 85
 James JORDAN, a minor child, by his mother Sarah Jordan, on
behalf of himself and all others similarly situated, Timothy
Barnes, a minor child, by his mother, Shirley Stonewall, on
behalf of himself and all others similarly situated
and
The Erie Human Relations Commission
and
Commonwealth of Pennsylvania, Intervenor,
v.
The SCHOOL DISTRICT OF the CITY OF ERIE, PENNSYLVANIA
and
William Gross, President Erie Education Association,
Pennsylvania State Education Association, National
Education Association
and
Robert J. La Penna and John Holter.
Appeal of ERIE EDUCATION ASSOCIATION.
 No. 79-1960.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 8, 1980.
Decided Feb. 4, 1980.
 
 George Levin, Shamp, Levin, Arduini, Jenks & Hain, Erie, Pa., for appellant.
 Joseph P. Burt, Northwestern Legal Services, Erie, Pa., for James Jordan, et al.
 Thomas F. Halloran, Asst. Atty. Gen., Pittsburgh, Pa., Edward G. Biester, Atty. Gen., Community Advocate Unit, Pittsburgh, Pa., for Commonwealth of Pennsylvania.
 John Beatty, School Sol., Erie, Pa., for School Dist. of City of Erie.
 Before GIBBONS, ROSENN, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Erie Education Association (the Association) appeals from the dismissal of its motion to have the School District of the City of Erie (the School District) held in contempt for violation of the consent decree which was before this court in 548 F.2d 117 (3d Cir. 1977), and 583 F.2d 91 (3d Cir. 1978). The district court held that the consent decree contained no prohibition against the challenged actions of the School District. We affirm.
 
 
 2
 The action which produced the consent decree challenged provisions of a collective bargaining agreement between the School District and the Association representing District teachers relating to suspension, transfer, or expulsion of students. It was brought on behalf of students, and the defendants were the School District and the Association. The latter did not file a counterclaim, a cross claim, or any other pleading seeking affirmative relief. Eventually, a consent decree was negotiated, which provided essentially for notice to the students and parents of the proposed disciplinary action and the reasons therefor, and hearings before various educational committees, before students could be suspended, transferred, or expelled for disciplinary reasons.
 
 
 3
 After the consent decree was filed the Supreme Court, in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), dealt with student due process rights in connection with suspension or termination of schooling. Following that decision the School District filed a motion to modify the decree to conform with the law announced by the Supreme Court. In 548 F.2d 117 (1977), we held that the district court had the power to modify the decree in light of Goss v. Lopez, but should not have vacated it. Thereafter the district court considered three modifications suggested by the School District, to each of which the Association objected. The district court added a new paragraph 32 to the decree providing in most cases for notice and an opportunity to explain before a student could be removed from class for disciplinary reasons. It refused to add paragraphs 33 and 34 proposed by the School District. Both the School District and the Association appealed. In 583 F.2d 91 (1978) we affirmed the exclusion of paragraphs 33 and 34, and directed modification of paragraph 32.
 
 
 4
 The effect of the consent decree, as modified, was to specify due process minimums for suspension, expulsion, or transfer of students for disciplinary reasons. Since the lawsuit was directed at the discipline provisions of the collective bargaining agreement between the School District and the Association, those provisions in Article V, Section H, are referred to in the preamble of the decree and the entire agreement is attached to it as an exhibit. Section H provides in part:
 
 
 5
 The principal responsibility for maintaining discipline remains with the teacher. It is recognized, however, that there are times when teachers will have to make use of special disciplinary procedures. In this connection disruptive students may be removed from the regular classroom when, in the professional judgment of the teacher, normal corrective measures have been ineffective in bringing about satisfactory improvement.
 
 
 6
 Such student shall be reported to the principal and he may take whatever action that he deems necessary except that he may not return the student to the classroom of the same teacher, or retain the student in the school without the teacher's approval.
 
 
 7
 (Emphasis added). The modification of the decree by the addition of paragraph 32 bears upon the italicized language of Section H of the collective bargaining agreement to some extent. Paragraph 32 reads:
 
 
 8
 Notwithstanding anything to the contrary herein contained, a student whose presence poses no continuing danger to persons or property or an ongoing threat of disrupting the academic process shall not be removed from the classroom for disciplinary reasons until after notice of proposed action and basis therefor and opportunity to explain his version of the occurrence or occurrences at the informal meeting with the building principal as provided in paragraphs 2 and 3.
 
 
 9
 (Emphasis added). The Association reads the italicized language in paragraph 32 as a reference to the teacher's authority, conferred by Section H of the collective bargaining agreement, to remove a disruptive student, and to prevent his return. Without deciding the question, we assume, arguendo, that paragraph 32 was drafted so as not to interfere with the teachers' bargained for authority to remove disruptive students from the classroom and prevent their return.
 
 
 10
 The present controversy concerns two students. A teacher requested that a student, Fillyaw, be prevented from returning to his classroom because of Fillyaw's disruptive effect upon other students. The principal returned Fillyaw to the classroom and threatened disciplinary action against the teacher if he did not acquiesce in such return. Another student, Beason, was returned to a regular school from the New Direction Center, a special school for problem students, without being processed through a teachers' committee as provided in the collective bargaining agreement. The Association took the position that both actions, by the principal in Fillyaw's case, and by the School District in Beason's case, violated the collective bargaining agreement. Again without deciding the question, we assume, arguendo, that the Association correctly interprets the agreement. But the Association went further, contending that because the collective bargaining agreement was annexed to the consent decree as an exhibit, recognition by the School District of the affirmative authority conferred by it upon teachers in the matter of discipline was mandated by the decree and enforceable by contempt. The Association reads the decree not merely as a prohibition against interference with due process rights of students, but as an injunction enforcing disciplinary authority of teachers. It moved to hold the School District in contempt.
 
 
 11
 The district court held, correctly, that incorporation of the collective bargaining agreement as an exhibit to the decree did not have the effect of enforcing it by injunction. Rather it was attached to the decree only as a ready reference to the teacher and administrator activities sought to be controlled in the interest of due process to students. Since neither Fillyaw nor Beason were removed from the classroom within the meaning of the decree, the prohibitions in the injunction never were operative.
 
 
 12
 We agree with the district court's interpretation of its own order. Indeed, there is no pleading of record upon which the district court could have predicated a grant of affirmative injunctive relief against the School District in favor of the Association or the teachers. Certainly, none of the ordering paragraphs of the consent decree in terms run in favor of the teachers. See Fed.R.Civ.P. 65(d). What the Association is attempting, obviously, is to freeze the discipline features of the present collective bargaining agreement, to the extent permitted by the consent decree, from future modification in the collective bargaining process between it and the School District. The Association's construction of the consent decree would, moreover, supplant contract remedies provided under Pennsylvania law for the enforcement of public employee collective bargaining agreements, and substitute contempt in the federal court. Neither result was contemplated when the consent decree was filed.
 
 
 13
 The judgment denying the Association's motion to hold the School District in contempt will be affirmed.
 
 
 14
 ROSENN, Circuit Judge, concurring.
 
 
 15
 I agree with the majority that we must affirm the judgment of the district court denying the Erie Education Association's (Association) motion to hold the School District of the City of Erie (School District) in contempt. I write separately because, unlike the majority, I do not agree fully with the district court's interpretation of the consent decree and its own order and because I believe that several of the litigants misunderstand certain aspects of our previous decision in Jordan v. School District (Jordan II), 583 F.2d 91 (3d Cir. 1978). I am concerned that unless there is a clear understanding of that decision and a determined effort on the part of the litigants to comply with the terms of the consent decree they negotiated, including the incorporated Article V, Section H, this protracted litigation will continue interminably with the likely prospect of irreparable damage to the Erie public school system.
 
 
 16
 As the majority notes, this litigation in the first instance was brought on behalf of certain students against the School District and the Association as defendants. The Commonwealth of Pennsylvania was permitted to intervene as a party-plaintiff. The students sought to enjoin the defendants from violating the students' due process rights under the United States Constitution and on that basis they obtained federal jurisdiction. As the majority notes, however, the defendants did not file a counterclaim, a cross claim, or any other pleading seeking affirmative relief. This is significant now in light of the effort of one codefendant, the Association, to attempt to hold another codefendant, the School District, in contempt of court for violating the consent decree.
 
 
 17
 The litigants ultimately negotiated a consent decree to which they attached "and made a part" thereof, Article V, Section H of the 1972-74 master contract, entered into between the School District and the Association. Although each of the parties consented to the decree and it was approved by written order of the trial judge, its basic purport was to set up a system of due process for students transferred from a regularly assigned school building to another school building in the school system for disciplinary reasons. The decree dealt exclusively with students who were transferred; the litigants and the district court agreed that it did not include students who might be expelled or suspended. See Jordan II, supra, 583 F.2d at 95, n.2. As I view the consent decree, Section H of Article V of the master contract is an integral part of it.[1] The first sentence of the section specifically provides that "(t)he principal responsibility for maintaining discipline remains with the teacher." The consent decree, however, sets forth due process protections for the disciplined student, primarily two formal hearings, if the student is recommended for transfer to another school building for disciplinary reasons.
 
 
 18
 The first hearing (Hearing I) is prescribed by paragraph 6 of the consent decree. It is to be held before an At-Large Committee composed of one administrator and two employees of the School District selected by the Association. The consent decree also grants to the student and his or her parents a right to appeal and obtain a de novo hearing designated as Hearing II. The preceding paragraphs of the decree essentially deal with the manner of notice to be given to parents and students of the proposed action and hearing. Paragraph 3, however, provides for notice to the parents or guardian and student of the right to a preliminary "informal meeting" with the building principal. At this "informal meeting," the principal is required only to furnish a copy of the procedures set forth in the consent decree and to verbally explain to the parent or guardian and student the due process rights described therein. Nothing in paragraph 3 suggests that a hearing of any kind is intended or provided for at this informal meeting. However, we found it necessary to modify the consent decree to provide the minimal due process protections for nondisruptive students mandated by Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Thus, in Jordan II, we structured paragraph 32 of the consent decree to provide that
 
 
 19
 Notwithstanding anything to the contrary contained herein, a student whose presence poses no continuing danger to persons or property or an ongoing threat of disrupting the academic process shall not be removed from class for disciplinary reasons until after notice of proposed action and basis therefor and opportunity to explain his version of the occurrence or occurrences at the informal meeting with the building principal as provided in paragraphs 2 and 3. (Emphasis supplied).
 
 
 20
 To the extent that Jordan II may require some sort of rudimentary hearing prior to the removal of a nondisruptive student, it clearly has no such effect upon the removal of disruptive students. The formal hearings provided for in the consent decree greatly exceed due process requirements; it is sufficient, under Goss v. Lopez, that, in the case of disruptive students, those hearings be held within a reasonable time after the student's removal from class. See Jordan II, supra, 583 F.2d at 96. As we indicated in Jordan II, Goss teaches that an informal hearing prior to the removal of a disruptive student is not required "as long as such removal is followed by appropriate notice and hearings, as is the case here." Id. Thus, I agree with the majority's assumption that our holding in Jordan II left intact "the teachers' bargained for authority to remove disruptive students from the classroom and prevent their return." Maj. op. at 87.
 
 
 21
 In the instant case, the affidavit by David Howell, a teacher, in support of the contempt motion avers that he removed a student, Derrick Fillyaw, from the classroom for disruptive behavior but that the principal reinstated him without referring the matter to the disciplinary committee provided for in Section H. The district court, however, concluded that there was no need to activate the consent decree until such time as a transfer is ordered "after a rudimentary hearing to be held before the school principal." This, however, reflects a misunderstanding of our decision in Jordan II. As discussed above, Jordan II modified the consent decree only insofar as it was necessary to provide the minimal due process protection for nondisruptive students which was mandated by Goss v. Lopez. Thus, Jordan II does not require a rudimentary hearing prior to the removal of a disruptive student.[2] The Constitution does not require such a hearing, see Goss v. Lopez, supra, nor do the provisions of the consent decree.
 
 
 22
 The provisions of the consent decree are activated whenever there is a recommendation that "a student be transferred from his/her regularly assigned school building to another school building for disciplinary reasons." The consent decree also provides that "whenever a student is removed from a required class and there is no similar required class within that building this shall be deemed to be a recommendation for transfer." The removed student thereupon becomes entitled to the full panoply of procedural protections provided by the consent decree. This includes the right to an informal meeting with the principal under paragraph 3 at which time the principal shall furnish the student and parent a copy of the procedures to be followed and a verbal explanation of their due process rights under the consent decree. In the case of disruptive students, however, this does not include any right to a rudimentary hearing with the principal even after removal from class. The formal hearings provided by the consent decree more than adequately protect the due process rights of the students. Thus, nothing in the consent decree, including Section H, confers upon the principal any power or authority to conduct a rudimentary hearing in the case of a disruptive student, either before or after the student's removal from class.[3]
 
 
 23
 Therefore, if Derrick Fillyaw was removed from the classroom for being disruptive, as Mr. Howell alleged in his affidavit, and if there is no similar required class within that building,[4] that removal constituted a recommendation for transfer and the procedures of the consent decree thereafter applied.[5]
 
 
 24
 The question, however, remains as to whether a breach of the disciplinary procedures by the School District permitted the district court to hold the School District in contempt on the motion of the Association acting in behalf of the teachers. I agree with the majority that it did not.[6] The initial complaint in this action was filed on behalf of the students. Only they sought due process protection, and, although the teachers may be entitled to injunctive or other relief in a proper jurisdiction, they sought none in the original action before the district court. Although some of the provisions of Section H provide important disciplinary powers for the teachers, which are no doubt enforceable in a proper forum, nothing in the consent decree indicates that it authorized the Association to enforce them by contempt proceedings in federal court. Indeed, there might be a serious question, in the absence of any federal question or violation of any constitutional rights of the teachers, whether the district court could have made the consent decree enforceable in behalf of the teachers in the federal courts even if the decree had explicitly so provided. The Association contends, however, that it gave up important rights when it reached an accommodation to enter into the consent decree. This may be true, but litigants cannot by consent obtain federal jurisdiction if none exists.
 
 
 25
 It is regrettable that this litigation has consumed so much time and expense in a matter of such important public interest to the community and to the educational system, particularly when it should be capable of ready resolution under the carefully drawn agreement of the parties. However, as we indicated in Jordan II, a federal court is one of limited jurisdiction, and on this record, we have no alternative but to affirm the judgment denying the Association's motion to hold the School District in contempt.
 
 
 
 [1]
 This interpretation of the integration of Article V, Section H as part of the consent decree is supported by the previous action of the district court. On July 1, 1975, the Association filed a motion for contempt against the School District. On October 22, 1975, in response to that motion, the court found the School District in contempt for failure to follow the procedures set forth in the consent decree. The School District thereupon moved to modify the decree, which motion ultimately led to the first appeal to this court. See Jordan v. School District, 548 F.2d 117 (3d Cir. 1977)
 
 
 [2]
 In the petition for rehearing filed after this court's opinion in Jordan II, the Commonwealth of Pennsylvania and the plaintiff-students conceded "that no prior rudimentary hearing is required before the initial removal of a disruptive or dangerous student from class."
 
 
 [3]
 Nevertheless, under the terms of the consent decree, the principal retains substantial authority. Pending the outcome of the formal hearings, the principal may, if he elects, take necessary action under Article V, Section H to deal with the removed student. However, he may not, without obtaining the approval of the teachers' disciplinary committee provided for in Section H, return the student "to the classroom of a teacher, or retain the student in the school without the teacher's approval."
 
 
 [4]
 This fact apparently does not appear in the record
 
 
 [5]
 Odette Beason, a student at the New Direction Center, was returned from that Center, without being processed through a teachers' committee as provided in Section H. The Association contends that such action violated the collective bargaining agreement. Even if such action violated the agreement, I believe that this court may not grant injunctive relief with respect to students' return from the New Direction Center. As noted in Jordan II, the return of students from the Center involves "essentially internal matters of school policy upon which a federal court should hesitate to pass judgment." 583 F.2d at 97
 
 
 [6]
 The district court concluded that, even if the provisions of Section H had been violated by the School District, those provisions were, nevertheless, not enforceable through contempt proceedings. The court rested its decision, inter alia, upon the Seventh Circuit's decision in H. K. Porter Co., Inc. v. National Friction Products, 568 F.2d 24 (7th Cir. 1977). I believe, however, that the instant case is distinguishable from H. K. Porter and thus is not controlled by the holding there
 In H. K. Porter the court held that the provisions of a settlement agreement were unenforceable through contempt proceedings because the "judgment did not use language which turned a contractual duty into an obligation to obey an operative command." 568 F.2d at 27. Following H. K. Porter, the district court in the instant case held that there could be no finding of contempt because "there is nowhere in the decree a command that the procedures of the collective bargaining agreement be followed where no transfer to the disciplinary school is being mandated." It is true that the provisions of the consent decree are activated only when there is a recommendation for transfer. In the instant case, however, I believe the provisions of the consent decree were triggered. Further, unlike the settlement agreement at issue in H. K. Porter, Section H was physically attached to and made a part of the consent decree. The consent decree was signed by counsel for all parties. In addition, it was signed by the court under the notation "Approved and So Ordered." Thus, were the Association a proper party to seek enforcement of the decree, I would not find H. K. Porter a bar to its enforcement through contempt proceedings.