### In re Arnold PECK, Debtor.

**Bankruptcy No. 5–89–01414. Motion No. 864.**

United States Bankruptcy Court, D. Connecticut.

June 4, 1993.

Francis G. Pennarola, Gager & Henry, Danbury, CT, For CTB Realty Ventures XIII, Inc.

Stephen P. Wright, DiPietro, Gulliver & Wright, New Haven, CT, for debtor.

## MEMORANDUM AND ORDER ON DETERMINATION OF WHETHER THE BREACH OF A COURT ORDERED STIPULATION CONSTITUTES BREACH OF THE ORDER APPROVING IT

ALAN H.W. SHIFF, Bankruptcy Judge.

CTB Realty Ventures XIII, Inc. ("CTB") seeks to hold the debtor, Arnold Peck, in civil contempt of this court's October 15, 1990 order (the "Stipulated Order") approving a stipulation (the "Stipulation"), also dated October 15, 1990, between CTB and Peck. As a threshold issue, the parties have requested, and this decision addresses, a determination of whether a breach of the Stipulation, attached as an exhibit to the Stipulated Order, constitutes a violation of that order.[1]

### BACKGROUND

For the purpose of this threshold determination only, the parties have stipulated to the facts submitted by CTB, which, as supplemented by undisputed facts apparent from the record, follow.

On September 24, 1990, Peck filed his Second Amended Plan of Reorganization (the "Plan"). At that time he was the president and one of two directors, and owned 51% of the stock, of Fairway Land Acquisition Company ("FLAC"). FLAC owned the Grassy Hill Country Club (the "Club") located in Orange, Connecticut.

CTB and its parent, Centerbank (or the "Creditors") held mortgages on the Club and other property which were being foreclosed when Peck filed his Plan. On October 9, 1990, Centerbank filed an objection to Peck's Plan because it would have allowed Peck to take equity and commission income from the sale of the Club and the other properties, which were owned by entities in which Peck had an interest. The Creditors voted to reject the Plan.

On or about October 15, 1990, Peck and the Creditors agreed to the form and terms of the Stipulation, which noted the Creditors' rejection of the Plan and their intention to "resist by every means available" any attempt by Peck to deal with or obtain commissions from the sale of the Club and the other properties. The Stipulation then provided that Peck would consent to foreclosure judgments, withdraw defenses, and take similar actions with respect to specific non-estate properties. Under the Stipulation, Peck agreed that he would not

> directly or indirectly, have or seek to have any involvement in or control over, or interfere with, the management of any of the Properties [including the Club], [or] directly or indirectly, deal with or attempt to deal, as contemplated in the Plan, as the same may be amended, with any of the Properties or with the entity that owns a particular property or with his partners or other shareholders in any such entity; it being specifically agreed that there shall be no attempt to bring any of the Properties under the jurisdiction of the Bankruptcy Court or to liquidate or dispose of any of the Properties and obtain commissions.

Stipulation, ¶ 5(a), (c). Centerbank, for its part, agreed in the Stipulation to make payments to Peck as debtor in possession when title to certain properties vested in Centerbank. In consideration of Peck's agreement, the Creditors amended their ballots to reflect their acceptance of the Plan and Centerbank withdrew its objection. Stipulation at ¶¶ 9, 10.

---

1. This decision does not address the issue of whether a bankruptcy court has civil contempt authority.

Paragraph 11 of the Stipulation provided: "This Stipulation shall not be effective unless and until it has been executed by the parties hereto and *submitted to the Bankruptcy Court and approved and SO ORDERED by the Bankruptcy Court*" (emphasis added). The parties jointly sought approval of the Stipulation and obtained the Stipulated Order on October 15, 1990. *See* Rule 9019(a), Fed.R.Bankr.P. Peck and the Creditors consented to the form and text of the Stipulated Order to which the original executed Stipulation was attached as Exhibit A. *Tr.*, January 22, 1993, at p. 7. The Stipulated Order noted that Centerbank's objection to the Plan had been resolved by the Stipulation; found that there was good cause for approving the Stipulation; and provided that: "[I]t is hereby ORDERED that the Stipulation attached hereto as Exhibit A and all ... the terms and conditions contained therein are approved." The Plan was confirmed on October 22, 1990.

On November 21, 1990, Peck, as shareholder and director of FLAC, voted to authorize FLAC to file a chapter 11 petition. On June 26, 1991, Peck, as president, authorized FLAC's bankruptcy filing. On June 28, 1991, FLAC filed a chapter 11 petition. It is therefore apparent that when Peck authorized FLAC's filing, he breached the Stipulation in that he directly or indirectly had some involvement in or control over or interfered with the management of the Club; he directly or indirectly dealt with the Club or FLAC; and he attempted to bring the Club under the jurisdiction of the bankruptcy court.

## DISCUSSION

### 1.

### Judicial Estoppel

■ Without conceding that he violated the Stipulation, Peck contends that a breach of his agreement under the Stipulation is not sanctionable because the Stipulated Order has an independent existence. Peck argues that notwithstanding the fact that he negotiated for the Creditors' consent to his Plan in return for his forbearance from certain activity, he entered into a Stipulation to that effect, and he consented to the Stipulated Order that is linked to that Stipulation, he may now take the position that a violation of the Stipulation is not tantamount to a violation of the Stipulated Order because the *form* of the Stipulated Order is defective. That argument not only lacks merit, as discussed below, but Peck's right to assert it is thwarted by the doctrine of judicial estoppel. That doctrine prevents

a party who benefits from the assertion of a certain position, from subsequently adopting a contrary position.... It is supposed to protect judicial integrity by preventing litigants from playing "fast and loose" with courts, thereby avoiding unfair results and "unseemliness."

*Young v. United States Dep't of Justice*, 882 F.2d 633, 639 (2d Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990) (citations omitted); *see also Kale v. Obuchowski*, 985 F.2d 360, 361–362 (7th Cir.1993); *Sperling v. United States*, 692 F.2d 223, 228 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) (Van Graafeiland, C.J., concurring) (judicial estoppel "precludes a litigant from leading a court to find one way in one proceeding and then, because his interests have changed, leading the court to find another way in a subsequent proceeding"); *Petition of Transrol Navegacao S.A.*, 782 F.Supp. 848, 852–853 (S.D.N.Y.1991). Since as noted the Plan could not have been confirmed without the entry of the Stipulated Order, Peck may not now be heard to argue that the Stipulated Order is defective. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990) (judicial estoppel may be applied against a party who obtained a judgment as a result of an inconsistent position).

### 2.

### Equitable Estoppel

■ The doctrine of equitable estoppel applies with equal force. It is "a means of precluding the assertion of a claim or defense against a party who has detrimental-

ly relied on the conduct of the party asserting the claim or defense." *Olsen v. United States,* 952 F.2d 236, 241 (8th Cir.1991). There is no question but that the Creditors gave up a right to oppose the Plan in consideration for Peck's consenting to the Stipulated Order. Now, despite the well-established principle that a party may not unilaterally withdraw from its stipulation, *United States v. New England Teamsters and Trucking Industry Pension Fund,* 737 F.2d 1274, 1278 (2d Cir.1984), Peck in effect argues that the Stipulated Order *was* binding on the Creditors but not on him.

 Peck also argues that since he was a fiduciary of FLAC, the Stipulation cannot be enforced against him for public policy reasons because it restricted him from acting in FLAC's best interest. Peck's *Memorandum of Law in Support of Objection to Movant's Motion for Contempt,* November 12, 1992, at pp. 8–9. That argument is also flawed. Peck knew what his obligations were with respect to FLAC when he agreed not to take any action to interfere with the Creditors' foreclosure action. Having induced the Creditors to support his Plan, Peck is estopped from asserting the argument that his fiduciary obligations to FLAC freed him from his side of the bargain, *i.e.,* any restraint established by the Stipulation and Stipulated Order.[2]

### 3.

### Rule 65(d), Fed.R.Civ.P.

██ Peck claims the Stipulated Order violated Rule 65(d), Fed.R.Civ.P., because it referred to the Stipulation which was attached as an exhibit. That rule provides in relevant part:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....

The Federal Rules of Bankruptcy Procedure, not the Federal Rules of Civil Procedure, govern practice and procedure in cases under title 11 of the United States Code. 28 U.S.C.A. § 2075 (West 1982); Rule 81(a)(1), Fed.R.Civ.P. Thus, Rule 7065, Fed.R.Bankr.P., and not Rule 65, Fed.R.Civ.P., governs the issuance of injunctions in title 11 cases. That distinction is significant because Rule 7065 provides that Rule 65, Fed.R.Civ.P., applies, with certain limitations, *in adversary proceedings.* Rule 7001(7), Fed.R.Bankr.P., defines adversary proceedings to include any proceeding "to obtain an injunction or other equitable relief." The Stipulation and Stipulated Order did not result from an adversary proceeding. Therefore, Rule 65 is inapplicable.[3]

 Further, and perhaps more to the point, the Stipulated Order is not an injunction. Every order binds affected parties to comply with its terms, but every order is not an injunction. An injunction is an "equitable decree compelling obedience under the threat of contempt." *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64,

---

**2.** Having concluded that Peck is estopped, I do not address the question of whether he could not have stipulated as he did because of the public policy that a corporation should not be prohibited from filing a bankruptcy petition if to do so would be in its best interest. That public policy is not implicated here because the Stipulated Order and Stipulation did not bar FLAC from filing a bankruptcy petition, but barred Peck from authorizing or participating in that action. *See also Duracell, Inc. v. Global Imports, Inc.,* 660 F.Supp. 690, 693 (S.D.N.Y. 1987) (rejecting argument that party could not be held in contempt of consent judgment which allegedly violated public policy).

**3.** Some of the Rules contained in Part VII of the Federal Rules of Bankruptcy Procedure, which mirror certain of the Federal Rules of Civil Procedure, apply in a contested matter, and the court may direct that other Part VII Rules apply in such matters where appropriate. *See* Rule 9014, Fed.R.Bankr.P. Rule 9014 does not provide that Rule 7065 applies in contested matters, and this court did not apply Rule 7065 to the contested matter relating to Centerbank's objection to the Plan. Indeed, in light of Rule 7001(7), which provides that an action to obtain an injunction is an adversary proceeding, it is unlikely that the drafters of Rule 9014 contemplated that Rule 7065 would apply in a contested matter.

75, 88 S.Ct. 201, 207, 19 L.Ed.2d 236 (1967). *See Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1055 (1st Cir.1987) ("An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions.") An injunction requires a showing of both an absence of an adequate remedy at law and irreparable harm if relief is not granted. *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

Because they are coercive in nature, injunctions must be specific in describing proscribed conduct. *International Longshoremen's Ass'n, Local 1291, supra,* 389 U.S. at 76, 88 S.Ct. at 208. That concern is not implicated here. Since Peck agreed not to engage in the conduct proscribed in the Stipulation in return for the Creditors' agreement to withdraw their objection to the Plan, neither the Stipulation nor the Stipulated Order were in the nature of coercive orders. *But see H.K. Porter Co., Inc. v. Nat'l Friction Prod. Corp.,* 568 F.2d 24, 27 (7th Cir.1978) (Rule 65(d) applied to court approved settlement agreement where order referred to settlement agreement and incorporated it by reference but apparently did not attach it as an exhibit).[4]

Even if Rule 65(d) (or Rule 7065, Fed.R.Bankr.P.) were implicated, it is not violated merely because proscribed conduct was referred to in an exhibit to the Stipulated Order rather than in the body of the Stipulated Order. In *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 809 (2d Cir.1981), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982), where exhibits were referenced in but not attached to an injunction, the Second Circuit held that

Rule 65(d) was satisfied here because the record of the proceedings relating to the proposed injunction amply demonstrate [the enjoined party's] grasp of these [exhibits] and its complete acquiescence in the reference to them.... [W]e will not allow [the enjoined party], whose own suggested language referred to those exhibits, to excuse its noncompliance on the ground that the ... order was impermissibly vague.

As noted, Peck was not only fully aware of the contents of the Stipulation and Stipulated Order, he participated in the drafting of those documents. *See Davis v. City and County of San Francisco,* 890 F.2d 1438, 1450 (9th Cir.1989), *cert. denied,* 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 206 (1990) (injunction did not violate Rule 65(d) where it referred to but did not attach copy of rules of which enjoined parties were aware); *United States v. McAndrew,* 480 F.Supp. 1189, 1192–1194 (E.D.Va.1979) (order referring to consent agreement did not violate Rule 65(d) where agreement and order were drafted by parties and defendants were familiar with terms of order and agreement; violation of order could result in finding of criminal contempt). Further, the language of the Stipulation was clear in proscribing Peck's alleged conduct. *Cf. Fonar Corp. v. Deccaid Services, Inc.,* 983 F.2d 427, 430 (2d Cir.1993) (contempt does not lie for violation of an injunction which refers to "unclear extrinsic documents").

Although Peck argues that the Stipulated Order was too vague to be enforceable, he at no time sought clarification of its scope and effect. Rather, Peck engaged in conduct which he knew violated the Stipulation, which had been approved at his request by court order. *Cf. International Longshoremen's Ass'n, Local 1291, supra,* 389 U.S. at 71, 88 S.Ct. at 205 (noting that court issuing injunction declined to clarify acts proscribed by order despite repeated requests); *Town of Islip*

---

4. The requirement that injunctions be specific also permits "an appellate tribunal to know precisely what it is reviewing." *Schmidt v. Lessard,* 414 U.S. 473, 477, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). Appellate review of the propriety of the granting of the Stipulated Order is not an issue where the Stipulated Order proscribing conduct was entered by agreement of the parties. The Stipulated Order, which refers to an unambiguous proscription of conduct in the Stipulation, is sufficiently clear to permit appellate review of any decision that the Stipulated Order was or was not violated. *See infra* p. 307.

*v. Eastern Air Lines, Inc.,* 793 F.2d 79, 83 (2d Cir.1986) (party could not be held in contempt of ambiguous order where it made reasonable efforts to seek clarification).

### 4.

### Civil Contempt

A finding of civil contempt requires only "that a specific and definite court order be violated by a party that has knowledge of the court's order." Wilfulness in the offending party need not be shown. *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications Consultants, Inc.),* 50 B.R. 250, 253 (Bankr.D.Conn.1985). Peck argues that his conduct did not violate the Stipulated Order because it did not "incorporate" the Stipulation. I do not agree. Peck may not avoid a finding of contempt merely because the Stipulated Order did not repeat the contents of the Stipulation.[5] In *Perfect Fit Indus., supra,* 646 F.2d at 808–809, the Second Circuit approved a finding of contempt notwithstanding that the violated injunction referred to (without attaching) exhibits with which the enjoined party was familiar. *See also Jordan v. School Dist. of the City of Erie, Pennsylvania,* 615 F.2d 85, 91 n. 6 (3d Cir.1980) (Rosenn, C.J., concurring) (contempt may lie for violation of provision of agreement physically attached to and made a part of consent decree); *Lelsz v. Kavanagh,* 673 F.Supp. 828, 840 (N.D.Tex.1987) (order giving final approval to settlement agreement and discussing terms thereof implicitly incorporated the agreement, and violation of the settlement agreement supported finding of contempt); *United States v. McAndrew, supra,* 480 F.Supp. at 1192–1194; *Winkle v. United States,* 381 F.Supp. 536, 538–539 (S.D.Ohio 1974) (reference to contract in will was sufficient to incorporate

contract into will where parties intended such a result); *cf.* Rule 10(c), Fed.R.Civ.P. ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").[6]

Peck also argues that the Stipulated Order did not require the parties to abide by the Stipulation. Again, I disagree. The whole point of the Stipulated Order was to add the court's imprimatur and its power to sanction disobedience to the agreement of the parties.

> Consent decrees are a hybrid in the sense that they are at once both contracts and orders, *see United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975); they are construed largely as contracts, but are enforced as orders.... It is recognized that a consent decree represents a compromise between parties who have waived their right to litigation and, in the interest of avoiding the risk and expense of suit, have "give[n] up something they might have won had they proceeded with the litigation...."

*Berger v. Heckler,* 771 F.2d 1556, 1567–68 (2d Cir.1985) (citations omitted), *quoting United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971); *see also Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 639 (2d Cir.), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987) (consent judgment entitled to res judicata effect).

Peck attempts to distinguish a consent decree, in which a court orders the terms agreed upon by the parties; from an order approving a stipulation. I am not persuaded that there is a distinction under the facts presented here. The Creditors could have pressed their objection to the Plan, and they might have succeeded. To avoid that risk, Peck agreed to enter into a

---

5. *See supra,* note 1. As noted, *supra* p. 307, there is no argument here that the Stipulation was vague so as to render the Stipulated Order approving it vague.

6. Peck relies upon cases which hold that contempt jurisdiction does not lie based on an order dismissing an action which does not incorporate *or even refer to* the stipulation on which

the dismissal is based. *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 34 (1st Cir.1990) (decree did not refer to settlement agreement); *Joy Mfg. Co. v. Nat'l Mine Serv. Co., Inc.,* 810 F.2d 1127, 1128 (Fed.Cir.1987) (final judgment was one of dismissal without prejudice only). That is not the situation here and the referenced authority is inapposite.

court-ordered stipulation. Like a consent decree, the Stipulated Order retained the attributes of a contract for the purpose of construction, and assumed the attributes of an order for the purpose of enforcement.

■ The weight of authority supports that conclusion. *Bezanson v. Bayside Enterprises, Inc. (In re Medomak Canning)*, 922 F.2d 895, 900 (1st Cir.1990) ("a court-approved settlement receives the same *res judicata* effect as a litigated judgment ..."); *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.1986) ("a settlement agreement is a contract, but, when incorporated into a judgment, becomes a court decree...."); *Boyd v. North End Auto Sales, Inc. (In re Check Reporting Service, Inc.)*, 137 B.R. 653, 657 (Bankr.W.D.Mich.1992) ("Consent orders entered by the court pursuant to a stipulation by the parties have a dual nature as both judicial decrees and contractual obligations."). Just as violations of consent orders may result in a finding of contempt, *E.E.O.C. v. Local 580, Intern. Ass'n of Bridge, Structural and Ornamental Ironworkers, Joint Apprentice–Journeyman Educ. Fund*, 925 F.2d 588, 594 (2d Cir.1991), so may violations of stipulations or settlement agreements ordered and approved by a court. *Nat'l Fiber Glass Products (Div. of G.K.L. Corp.) v. Amcon Indus., Inc.*, Civ.A. No. 91 C 3235, 1992 WL 345055, at *3 (N.D.Ill. Nov. 10, 1992) (contempt jurisdiction lies for violation of court approved settlement agreement; rejecting argument that only contract remedies apply); *Eardman v. Bethlehem Steel Corp.*, No. 84–CV–274E, 1992 WL 119158, at *2 (W.D.N.Y. May 19, 1992) (failure to abide by court approved stipulation implicates court's contempt power); *Stein and Day Inc. v. Coordinated Systems and Services Corp. (In re Stein and Day Inc.)*, 83 B.R. 221 (Bankr.S.D.N.Y.1988) (contempt certified for violation of court-approved stipulation requiring a creditor to use best efforts to ship books to a debtor within a set time period); *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 666 F.Supp. 159, 160 (E.D.Ark.1987); *Lasky v. Quinlan*, 419 F.Supp. 799 (S.D.N.Y.1976), *vacated as moot*, 558 F.2d 1133 (2d Cir.1977) (enforcing by civil contempt a court-approved stipulation).

As the court held in *In re Stein and Day Inc., supra*, 83 B.R. at 226:

Parties to a litigated matter may resolve their dispute by entering into a stipulation which obligates one or more of the parties to perform, or refrain from performing, specific acts. If the parties submit such stipulation to the court and it is "So ordered and approved" by the court, the noncompliance by one of the parties with such stipulation may give rise to a contempt order because a "So ordered" stipulation has a double aspect both as a contract and as a court order.

*See Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180, 1188–90 & n. 13 (8th Cir.1984) (court erred in entering the words "so ordered" on a settlement agreement, where the parties did not request court approval, because that notation would render a violation of the settlement agreement punishable by contempt); *Morales Feliciano v. Hernandez Colon*, 697 F.Supp. 26, 29, 34 (D.P.R.1987); *Lelsz, supra*, 673 F.Supp. at 839–840 (rejecting argument that court approved stipulation was not a "consent decree" and therefore could not be enforced through contempt proceedings); *Intern. Distrib. Centers, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 727, 730–731 (S.D.N.Y.1986) (contempt sanction available for debtor's transfers of property alleged to be in violation of stipulation prohibiting transfer of assets where stipulation was "so ordered" by the court); *In re Cuascut*, 91 B.R. 13, 15 (Bankr.E.D.Pa.1988) (declining to enforce breach of court approved stipulation through contempt where breach was failure to pay money and debtor was financially incapable of complying).

■ Litigants may, no doubt, seek court approval of a stipulation for a limited purpose. That is not this case. The parties bargained for enhancing the Stipulation with the force of a court order. That intent is demonstrated by Paragraph 11, which provided that the Stipulation would not be effective unless and until it was "so ordered" by the court, and by Paragraph 8,

**310**

which provided that "the provisions of the Stipulation," *i.e., all* of the provisions, would remain binding on the parties irrespective of the terms of the confirmed Plan. If the parties desired court approval of only a portion of the Stipulation, they could, and should, have sought an order to that limited effect.

Affording the Stipulated Order the full force of a court order is not only mandated by law, it is also supported by policy considerations. "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 621 (6th Cir.1973). Peck's creditors are entitled to rely on the Stipulated Order being exactly what it purports to be: an enforceable order of this court. *Cf. In re Stein and Day Inc., supra,* 83 B.R. at 226–227 (creditor used so ordered and approved stipulation to collect prepetition debt owed by debtor, but breached its agreement in stipulation to use best efforts to ship books to debtor within two days after invoice). A contrary result would inject uncertainty into the enforcement of stipulated orders, which contribute immeasurably to the prompt and efficient administration of bankruptcy cases.

### ORDER

As to the threshold issue, *see supra* p. 304, of whether a breach of the Stipulation, attached as an exhibit to the Stipulated Order, constitutes a violation of that order, I conclude for the foregoing reasons that it does, and IT IS SO ORDERED.