James JORDAN, a minor child, by his mother, Sarah Jordan, on behalf of himself and all others similarly situated, et al.

Commonwealth of Pennsylvania, Intervenors,

v.

The SCHOOL DISTRICT OF the CITY OF ERIE, PENNSYLVANIA, et al.

James Jordan, Plaintiff, and as representative of the class of Plaintiffs, and the Intervenor-Plaintiff, Commonwealth of Pennsylvania, Appellants in No. 76–1291.

Appeal of ERIE EDUCATION ASSOCIATION, in No. 76–1292.

Nos. 76–1291, 76–1292.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1976.

Decided Jan. 14, 1977.

George Levin, Shamp, Levin, Arduini and Hain, Erie, Pa., for appellant Erie Ed. Ass'n.

John W. Beatty, Sol., Erie, Pa., for appellee School Dist. of City of Erie.

Robert P. Kane, Atty. Gen., Thomas F. Halloran, Asst. Atty. Gen., Community Advocate Unit, Pittsburgh, Pa., for Com. of Pa.

J. Steven Xanthopoulos, Henry Weissman, Legal Services for Northwestern Pa., Erie, Pa., for James Jordan et al.

Before ROSENN, FORMAN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case has its genesis in a dispute over the disciplinary procedures used in the pub-

lic schools of the City of Erie, Pennsylvania. The threshold issue before this court, however, is whether a district court has the power to modify its decree, entered with the consent of the parties before it, when one of those parties is unwilling to agree to the modification.

## I.

The individual plaintiffs commenced a class action on their own behalf as students and on behalf of all other students in the School District of Erie, Pennsylvania, against the Board of Education of the City of Erie ("the Board") and the Erie Education Association ("the Association"). They sought preliminary and permanent injunctive relief to prevent the defendants from utilizing certain procedures in the Master Contract between the Board and the Association[1] relating to the suspension, transfer, or expulsion of students in the school district. Specifically, the individual plaintiffs alleged in their complaint that the procedures set forth in Article V(H) of the Master Contract violated their rights under the fourteenth amendment of the United States Constitution and section 1318 of the Pennsylvania School Code.[2]

The students were joined as plaintiffs by the Erie Human Relations Commission ("the Commission") which sought to enjoin the defendants from suspending, transferring, or expelling students in the Erie School District pursuant to procedures which discriminated against black students solely because of their race in violation of their rights under the equal protection clause, the fourteenth amendment, and related statutes. The Commission's "Amendment to Complaint" specifically stated that the Commission did not object to the exist-

ence or utilization of Article V(H) of the Master Contract, but rather complained of the discriminatory manner in which the provisions of the article were administered.[3]

On April 3, 1973, the district court entered an order temporarily restraining the defendants from utilizing the disciplinary procedures in the Master Contract and fixing April 18, 1973, as a tentative date for a hearing on the motion for preliminary injunction. On April 25, 1973, after a hearing, the court entered an order granting the preliminary injunction.

The Commonwealth of Pennsylvania, acting as *parens patriae* to protect the constitutional rights of its citizens, intervened as party plaintiff on May 30, 1975. The intervenor's complaint sought to enjoin the defendants from utilizing the disciplinary procedures set forth in Article V of the Master Contract for the reasons set forth in the individual plaintiffs' complaints, and because those procedures allegedly violated sections 702 and 703 of the Pennsylvania Public Employee Relations Act[4] and the Pennsylvania constitution. In addition, the intervenor requested a final judgment declaring the disciplinary procedures to be invalid.

The suit involved, in essence, the procedures to be followed (1) when a student is transferred from his or her regularly assigned building to another building for disciplinary reasons, and (2) when a student is removed from a required class and there is no similar class within that building. After a stormy period of pre-trial maneuvers, discovery, and motions for summary judgment, the parties succeeded in negotiating a consent decree. On February 5, 1974, following a hearing on a motion to approve

---

1. The Erie Education Association is the exclusive representative of all professional employees in the School District of the City of Erie for purposes of collective bargaining.

2. Currently codified at Pa.Stat.Ann. tit. 24, § 13–1318 (Supp.1976).

3. The plaintiffs asserted that the district court had jurisdiction under the fourteenth amendment to the United States Constitution, 42 U.S.C. § 1983 (1970), and 28 U.S.C. § 1343

(1970). In addition, the Erie Human Relations Commission separately alleged jurisdiction under any "Act of Congress providing for equal rights or civil rights for all persons within the jurisdiction of the United States and by principles of pending jurisdiction."

4. Currently codified at Pa.Stat.Ann. tit. 43, § 1101.702, –.703 (Supp.1976).

the consent decree, the district court entered an order approving the decree signed by all the parties. Stripped of its numerous paragraphs and exhibits, the decree basically provided for (1) notice to the students and parents of the proposed disciplinary action and the reasons therefor, and (2) hearings before various educational committees. Informal meetings and appeals from the decisions of the committees also were prescribed.

The district court retained jurisdiction of the action until all of the provisions of the decree were properly effectuated. Except for several motions implementing the consent decree procedures, the proceedings reposed in tranquillity for over a year. They erupted, however, on April 21, 1975, when the plaintiffs and the intervenor, alleging numerous violations of the consent decree, filed a joint motion requesting the district court to adjudge the defendants in contempt and to impose appropriate sanctions. The district court thereupon held a number of hearings on that motion. On July 1, 1975, the Association also moved the court to hold the School District in contempt and to imposed appropriate sanctions. On August 4, 1975, the court entered an order directing, *nunc pro tunc*, that the action be maintained as a class action under rule 23(b)(2) of the Federal Rules of Civil Procedure, and that the class consist of all students enrolled in the Erie School District as of February 5, 1974, and all others who had or would become similarly situated. The district court found the defendant school district in contempt on October 22, 1975.

In the meantime, the school district had filed a motion on August 8 to modify the consent decree, urging, in the words of the district court's memorandum on the motion, that "compliance with the consent decree gives the teachers power to suspend students from school without approval and consent of the building principal or the superintendent of schools or the directors of

the school district [in] violation of the student's [*sic*] constitutional right to an education" and that "a suspension by anyone other than a principal or teacher in charge and continuance of such suspension for more than ten days is in violation of the student's [*sic*] due process rights as laid down in *Goss v. Lopez* [419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)].

The district judge held a hearing on the motion to modify, and concluded that the consent decree was "to some extent out of step with the rights of students as enunciated by the Supreme Court in *Goss v. Lopez* . . . ." Nevertheless, because the decree was not an ordinary judgment following adverse proceedings, but rather resulted from negotiations among and agreement by the parties, the court determined that it could not modify the decree under rule 60(b)(5) of the Federal Rules of Civil Procedure:

> [T]his . . . is a consent decree which, in the view of the court, cannot be modified except with the consent of all parties, under *United States v. Armour and Co.*, [402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)], and *Theriault v. Smith*, [523 F.2d 601 (1st Cir. 1975)]. In such a situation, it appears that the only course open to the court if the parties cannot agree upon a modification is to vacate the entire decree and start over again.

The district court entered an order on December 31, 1975, vacating the consent decree in its entirety effective 40 days from the date of the order unless during that period the parties agreed to the modification suggested in the court's memorandum opinion.

The defendant Erie Education Association took an appeal to this court. The individual plaintiffs and the intervenor, the Commonwealth of Pennsylvania, also filed appeals and cross-appeals.[5] The Association raises a number of issues dealing with the

---

**5.** This court has jurisdiction of the appeals under 28 U.S.C. § 1292(a)(1), which provides for jurisdiction in the courts of appeals from [i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . . The instant appeals are essentially from an order of the district court dissolving a permanent

effect of *Goss v. Lopez* on the consent decree and asserts that there was no need either to modify or to vacate the decree. The student plaintiffs and the Commonwealth of Pennsylvania, intervenor, contend that *Goss* does not require vacation of the consent decree but only its modification. We conclude that the district court could modify the consent decree without the agreement of the parties, and that, having that power, the court abused its discretion in vacating the decree.

## II.

The district court believed that three cases precluded it from modifying the consent decree without the consent of the parties. The first, *United States v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.E.2d 256 (1970), involved "the construction of an existing consent decree" entered in 1920 against Armour and four other of the nation's largest meatpackers, which the Government had charged with conspiratorial and individual efforts to monopolize a substantial part of this country's food supply. *Id.* at 681, 91 S.Ct. 1752. Almost half a century later the Government attempted to apply that decree to another company, Greyhound Corporation, which had acquired a controlling interest in Armour and allegedly was engaging in business forbidden to Armour. The Government made no effort, however, to modify the decree so as to extend it to Greyhound. In fact, the Supreme Court observed that "if the Government believed that changed conditions warranted further relief against the acquisition [of a majority of Armour stock by Greyhound], it could have sought modification of the Meat Packers Decree itself." *Id.* at 674–75, 91 S.Ct. at 1754 (footnote omitted). The Court held only that the ownership of a majority of Armour stock by Greyhound, which engaged in business possibly forbid-

den to Armour by the consent decree, in itself did not violate the decree's prohibition against "directly or indirectly . . . engaging in" the forbidden business. *Armour*, therefore, does not deny the power of a district court to modify a consent decree without the agreement of the parties; on the contrary, the previously quoted language tends to confirm the existence of that power.

The district court also relied on *Theriault v. Smith*, 523 F.2d 601 (1st Cir. 1975). The issue in that case, however, was the propriety of a district court's order in vacating a consent decree, not the power of .the court to modify the decree. The First Circuit found that the district court did not abuse its discretion in vacating the decree because a subsequent Supreme Court decision "represented a fundamental change in the legal predicates of the consent decree." *Id.* at 601 (footnote omitted). Apparently, the district court in *Theriault* had no motion to modify before it. We do not regard that case as apposite.

Finally, the district court cited *Wallace Clark & Co. v. Atchison Industries, Inc.*, 394 F.Supp. 393 (S.D.N.Y.1975), a case concerning the validity and infringement of a patent. The district court there held that a consent decree covering those matters entered in a prior action between the parties was res judicata in a second action between them. The res judicata effect of the consent decree in the instant case is not at issue. *Wallace Clark* does not address the question presented in this appeal—whether a district court may modify a consent decree without securing the agreement of the parties.

## III.

*Theriault v. Smith, supra,* cited with approval two cases that we believe are perti-

---

injunction. The plaintiffs and the intervenor originally requested preliminary injunctive relief, the consent decree had the force and effect of a mandatory injunction, and the district court adjudged the defendant school district in civil contempt for violating the terms of the consent decree. *Cf. Mayberry v. Maroney*, 529 F.2d 332 (3d Cir. 1976); *SEC v. Jan-Dal Oil &*

*Gas, Inc.*, 433 F.2d 304 (10th Cir. 1970). *See generally Ettelsen v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 192, 63 S.Ct. 163, 87 L.Ed. 176 (1942) (Section 1292 "looks to the substantial effect of the order made."); *New York Tel. Co. v. Communications Workers*, 445 F.2d 39, 46 (2d Cir. 1971).

nent to the resolution of the issue in the case *sub judice.* The first is the landmark case of *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), which involved the consent decree entered into in 1920 by Armour & Co. and four other meatpackers. In *Swift,* defendants Swift and Armour filed a petition in 1930 to modify the consent decree "and to adapt its restraints to the needs of a new day." *Id.* at 113, 52 S.Ct. at 462. Before confronting the question whether the facts warranted a modification of the original consent decree, the Supreme Court first had to determine the very question now before us, whether the district court had the power to modify the consent decree. Mr. Justice Cardozo, writing for the Court, had no difficulty answering that question affirmatively:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. . . .
> Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . .
> The result is all one whether the decree has been entered after litigation or by consent. *American Press Assn. v. United States,* 245 F. 91 [(7th Cir. 1917)]. In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act. . . . [I]n truth what was . . . adjudged was not a contract as to any one. The consent is to be read as directed toward events as they

then were. It was not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be.

*Id.* at 114–15, 52 S.Ct. at 462.

The other pertinent case referred to in *Theriault* is *System Federation No. 91, Railway Employees' Department v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961). In *System Federation,* nonunion employees of a railroad brought suit in 1945 against the railroad and a number of unions representing its employees, alleging that the defendants discriminated against nonunion employees. At that time, the Railway Labor Act prohibited union shop agreements between railroads and labor unions.[6] The litigation resulted in a consent decree forbidding discrimination by the defendants against nonunion employees because of their refusal to join unions. After the Act was amended in 1951 to permit union shop agreements between railroads and labor unions,[7] the unions moved, pursuant to Fed.R. Civ.P. 60(b), to modify the decree to allow them to take advantage of the newly granted statutory privilege. The district court, which had retained jurisdiction of the suit, denied the motion.

Again the Supreme Court first considered whether the district court had the power to modify the consent decree. Mr. Justice Harlan, writing for the Court, observed that the parties had not questioned the district court's power to modify the decree. "[T]hat proposition indeed could not well be disputed," he wrote, and he went on to quote *Swift* with approval. *Id.* at 646–47, 81 S.Ct. at 371. The Court also noted that it is indisputable that "a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." Recognizing that firmness and stability must be attributed to continuing injunctive relief based on adjudicated facts and law, the Court

---

6. Act of June 21, 1934, ch. 691, § 2, 48 Stat. 1186.

7. Act of Jan. 10, 1951, ch. 1220, 64 Stats. 1238 (codified at 45 U.S.C. § 152, Eleventh (1970)).

emphasized that "neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided." A court, nonetheless, should not be required to disregard subsequent significant changes in law or fact; a balance "must thus be struck between the policies of *res judicata* and the right of the court to apply modified measures to changed circumstances." *Id.* at 647–48, 81 S.Ct. at 371. The Court concluded that had the injunction resulted from adversary proceedings, it would have been an abuse of discretion to deny modification in view of the amendatory legislation. In considering whether the consent decree made a difference and barred the district court's modification, the Court again turned to *Swift* and determined that it did not. In reversing both the district court and the court of appeals, the Supreme Court held:

> The parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction. . . .
> [J]ust as the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives, so must it be free to modify the terms of a consent decree when a change in law brings those terms in conflict with statutory objectives. In short, it was the Railway Labor Act, and only incidentally the parties, that the District Court served in entering the consent decree now before us. The court must be free to continue to further the objectives of that Act when its provisions are amended.

*Id.* at 651, 81 S.Ct. at 373.

None of the parties to this appeal has briefed or argued the *System Federation* case. The principles of that case, it appears to us, are directly applicable to the instant action. In *System Federation*, an Act of Congress had altered the legal rights of the parties after the issuance of an injunction with their consent. In this case, the motion for modification alleges that a decision of the Supreme Court has altered the applicable principles of law and requires a modification of the decree. *System Federation*

teaches us, as does *Swift*, that a district court has the power to modify its decree entered with the consent of the parties if a change in the law alters the operative conditions affected by the decree.

 We therefore hold that the district court had the power to modify the consent decree in the instant case, notwithstanding the failure of all parties to agree to the modification. Although the district court may also have had the power to vacate the decree, *Theriault v. Smith*, 523 F.2d 601 (1st Cir. 1975), we conclude that under the circumstances of this case—where the court was presented with only a motion to modify, where the court did not find the change in law so sweeping as to totally invalidate the consent decree, and where the parties had relied upon the decree for almost two years—the district court abused its discretion in vacating the decree. On remand, the district court will effect such modification of the consent decree, if any, as it determines is required by *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

In view of our disposition of the threshold question of the power of the district court to modify the decree, we find it unnecessary to discuss the other issues raised by the appellant and cross-appellants. Costs taxed against appellee.

## IV.

The order of the district court vacating the consent decree will be reversed and the case remanded for proceedings consistent with this opinion.