**AMERNATIONAL INDUSTRIES, INC.,**
**Plaintiff–Appellee,**

**v.**

**ACTION–TUNGSRAM, INC., Defendant,**

**Electroexportimport,**
**Defendant–Appellant.**

**No. 90–1050.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1991.

Decided Feb. 14, 1991.

---

Philip Vestevich and William J. Lamping, argued, Vestevich, Dritsa, Evans & Becker, Bloomfield Hills, Mich., and Christopher A. Payne, Stradley, Schmidt, Stephens & Wright, Dallas, Tex., for plaintiff-appellee.

David H. Paruch (argued), Clark, Klein & Beaumont, Detroit, Mich., for defendant and defendant–appellant.

Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Electroexportimport ("Electro") appeals from an order denying its motion to set aside a default judgment of approximately $11 million entered in favor of plaintiff-appellee Amernational Industries, Inc., ("Amernational") as a sanction for failure to comply with Amernational's discovery request for production of documents. Because we are firmly convinced that the district court abused its discretion, we reverse.

## I.

### A.

This case arises out of the sale of household light bulbs by a Romanian trading company for importation into the United States by two United States based corporations, one being the plaintiff and the other a competitor of the plaintiff. At the center of this dispute is a contract executed on March 21, 1983, between Electro, the wholly owned trading company and instrumentality of the government of Romania, and the plaintiff for the sale of approximately $1,000,000 worth of incandescent bulbs.

### B.

Because of the nature of this case, we find it necessary to provide a fairly detailed account of its procedural progress. The original complaint filed January 22, 1986, named Action–Tungsram, Inc. ("Tungsram") on theories of interference with contract and antitrust violations; however, the complaint against Tungsram was dismissed on June 19, 1987. An amended complaint adding Electro on theories of breach of contract and antitrust violations was filed

on August 20, 1986. Initially, the summons and complaint were served on a Romanian diplomat with no affiliation to Electro; however, on December 30, 1986, proof was posted in Romania that Electro received a copy of the complaint that was mailed by the district court clerk on October 10, 1986. In the meantime, on December 12, 1986, plaintiff filed a request for production of documents by Electro[1] and served that request, like the complaint, on the Romanian diplomat.

In March, April and June, 1987, Electro failed to appear at status conferences scheduled by the district court. On the first occasion, Electro had a valid excuse because the court failed to notify Electro of the conference. The failure to appear in April and June led to a motion by the plaintiff for imposition of sanctions and default judgment.

In opposing the motion, Electro argued that default judgment could not be entered against it as an instrumentality of a foreign sovereign. *See* 28 U.S.C. § 1608(e). In a cross-motion, Electro sought dismissal of the action on the grounds that Amernational had not complied with certain provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and that the dispute should be submitted to arbitration pursuant to an arbitration clause in the contract between Electro and Amernational.

Based upon the proof of service posted December 30, 1986, the district court found that the Foreign Sovereign Immunities Act had been complied with. The court then dismissed three of the seven counts in the complaint as covered by the arbitration clause, and held that the arbitration clause did not apply to the alleged antitrust violations as they were not matters arising "in connection with the present contract." The court also denied default judgment but granted the motion as to sanctions leaving the amount to be determined later.

Following an unsuccessful attempt by Electro to appeal from the order denying

---

**1.** In "shotgun" form, the document request sought an extensive list of "all documents," etc., "relating to dealings" between Amernational,

Tungsram and any Romanian entity. *See* J.A. 62.

the motion to dismiss the remaining counts of the complaint,[2] the district court entered a scheduling order on May 24, 1988, calling for the completion of discovery by December 31, 1988. On November 7, 1988, the court entered an order awarding sanctions against Electro in the amount of $2300.

On March 17, 1989, Amernational filed a second motion for entry of default judgment based on non-payment of the $2300 in sanctions and Electro's failure to respond to the request for production of documents allegedly served on Electro on December 11, 1986. We note that Amernational's brief in support of the motion concentrated on the failure to pay sanctions as ordered and made no mention of a discovery violation. Electro responded that this was the first notice to its counsel of any outstanding request for production of documents and tendered a check to Amernational's counsel in full payment of the awarded sanctions. At a March 24, 1989, conference, the district court took the motion for default judgment under advisement with respect to the outstanding discovery request.

On June 8, 1989, Amernational renewed its motion for default judgment based on the failure to produce the requested documents. In response to the motion, Electro's local counsel indicated that, per telex communication from Romania, Electro was undertaking to comply with the document request. Pursuant to a show cause order, the court held a hearing on August 2, 1989, as to whether default judgment should be granted. At the time of the hearing, Electro had partially complied with the production request by turning over eighty-seven pages of documents to Amernational's counsel two days before the hearing. Amernational contended that the documents produced were far short of those needed to prosecute the case, and did not constitute a

response as envisioned by Federal Rule of Civil Procedure 34.

At the hearing, Electro's counsel complained that the initial discovery request was made, without translation, before effective service of process on Electro.[3] Electro's counsel also assured the court that he had made diligent efforts to secure the documents and believed that he had impressed upon the client the necessity of producing the documents; however, he was unable to give the court assurance as to when discovery would be completed or any hope that the case would be resolved by settlement in the near future.

The court granted plaintiff's motion for default judgment stating that "without taking very strong action at this time ... this case will just be further delayed and your client will just assume that in the process of things it will go on indefinitely." J.A. 329. The court further explained:

*I'll just state in closing that I will entertain a motion to set that aside if there are reasons why I should do so. Possibly you can look to bringing the necessary persons together or parties in an attempt to resolve it. But short of that, plaintiff will have their [sic] judgment.*

J.A. 329 (emphasis added).

The court instructed counsel for Amernational to prepare a proposed default judgment and submit it to Electro for consideration. When the parties disagreed as to the content of the proposed order, the district court drafted its own and entered judgment for plaintiff on August 29, 1989. However, for reasons which are not clear, Electro did not receive notice of entry of the judgment until October 2, 1989. At this time the thirty-day period for filing a notice of appeal had expired, and Electro failed to seek an extension of the appeals period.

The default judgment as entered awarded damages in the sum of $11,070,000 plus

---

**2.** The appeal was dismissed on the ground that the denial of the motion to dismiss was not a final judgment. *Electroexportimport v. Amernational Indus.,* 845 F.2d 325 (6th Cir.1988) (unpublished order). The law has subsequently changed to allow such an appeal where denial of arbitration is involved. *See* 9 U.S.C. § 15(a).

**3.** The Federal Rules of Civil Procedure provide for service of a document request upon a defendant only *"after* service of the summons and complaint." Fed.R.Civ.P. 34(b) (emphasis added).

interest, attorney's fees and costs. The judgment did not explain the methodology by which the court arrived at the damage award; however, it appears to be the product of tripling plaintiff's lost profits of $3,690,000 as calculated by plaintiff's president, Casimir Rygiel. Rygiel submitted an affidavit in which he stated that Electro's breach of contract and associated antitrust violations caused plaintiff to lose $16,200,000 in sales, with resulting lost profits of $3,690,000. However, Rygiel recognized that the cost of sales component of his calculations was only an approximation.

On November 6, 1989, following plaintiff's motion for execution on the judgment, Electro filed a motion to set aside the judgment and to stay execution. On December 21, 1989, the district court held a hearing on the respective motions. In the meantime, Electro's local counsel had furnished what it claimed to be the balance of the requested documents under cover of letters dated July 31, 1989, November 4, 1989, and November 10, 1989. Electro's counsel served and filed a formal response to Amernational's production request on December 21, 1989, immediately after the hearing.

At the hearing, counsel for Electro asserted three reasons why the default judgment should be set aside under Federal Rule of Civil Procedure 60(b)(1)[4]. First, counsel argued that the default judgment should be set aside because of procedural irregularities in that the judgment was entered on the basis of non-compliance with a production request that was never served on counsel of record and, furthermore, was made even before Electro formally became a party to the litigation.

Second, counsel argued that there was justifiable excuse for the non-compliance. Testimony to this effect was tendered but was unnecessary because "[p]laintiff's counsel stipulated for purposes of the hearing to Defendant's recitation of the reasons why there had been a delay in the document production, agreeing that there had been a flood, that there had been a move and that Electro's records were in a disarray." Appellee's Brief at 10. To Amernational's assertion that there had been no prior mention of the difficulties encountered in producing the documents, Electro's counsel explained that because of difficulties in communicating with Romania by telex, counsel had only recently become aware of the reasons for the delay. To illustrate the magnitude of the communication problem, counsel explained that in one day he made fifteen attempts to communicate with Romania only to have his telex communication interrupted or received in a garbled form.

Third, counsel for Electro argued that the default judgment should be set aside because of a high likelihood of success on the merits. Electro attempted to tender approximately twenty minutes of testimony by Mr. Ionescu, the manager of Electro who had been flown in from Romania; however, the district court refused to allow any testimony concerning the merits of the case.

Ionescu also was prepared to assure the court that its orders would be complied with in the future. This was consistent with counsel's representation to the court that the Romanians had attempted to comply with discovery demands to the extent that they understood and were able.

In denying Electro's motion to set aside the judgment and granting Amernational's motion for execution on the judgment, the district court stated:

Months after the default judgment, I am hearing for the first time some of the reasons the discovery ordered by this court, production of documents [sic] was not provided, and, specifically, what the parties were directed to do.

It's too little too late and I don't find what I've heard today persuasive. I have no sense that if this judgment was [sic] set aside, we would not all be back in another year or two hearing the same reasons why this case couldn't proceed

---

**4.** Electro also asserted that the court could grant relief from the judgment under Federal Rule of Civil Procedure 60(b)(6) which allows the court to give relief from a final judgment for "any other reason justifying relief from the operation of the judgment."

on this court's docket. Setting aside this judgment at this time would severally [sic] prejudice the plaintiff.

I don't understand at this time why the defendants [sic] did what they [sic] did. And I believe the reasons stated on the record are just not sufficient to set aside the judgment based on what I have. The rules are clear. There was no mistake or inadvertence.

If the parties were just proceeding as they thought they might and as their circumstances allowed, the rules are clear, there are ways to keep the court advised to get the time necessary to do what's required to be done.

But from the anything [sic] I have before me, the defendants [sic] were not doing so. They [sic] have attorneys that definitely were in contact with them [sic]. If they [sic] weren't following their [sic] counsel's advice, they [sic] did so at their [sic] peril.

J.A. 494. On December 28, 1989, the district court entered an order denying relief, and this timely appeal followed.

The principal issue presented in this appeal is whether the district court abused its discretion in failing to grant Electro's motion under Federal Rule of Civil Procedure 60(b) for relief from the judgment entered as a sanction for discovery abuses.

## II.

### A.

■ Federal Rule of Civil Procedure 60(b) allows a district court, upon a party's motion, to relieve that party from a final judgment upon a showing of "(1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment." A district court's ruling on a Rule 60(b) motion is directly appealable; however, "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Peake v. First Nat'l Bank and*

*Trust Co.*, 717 F.2d 1016, 1020 (6th Cir. 1983) (quoting *Browder v. Department of Corrections*, 434 U.S. 257, 264 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978)). "The decision to grant or deny ... motions under Rule 60(b) is discretionary with the district court. Consequently, we review whether the district court abused its discretion. 'Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.' " *Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 132–33 (6th Cir. 1990) (citations omitted).

### B.

■ Electro places great emphasis on the fact that it is "the government-owned and controlled trading company of the Socialist Republic of Romania." Appellant's Brief at 20. In its brief, Electro essentially argues that relief should have been granted under Rule 60(b) because pursuant to 28 U.S.C. § 1608(e),[5] judgment cannot be entered against an instrumentality of a foreign state without a trial on the merits.

Without directly addressing Electro's argument, plaintiff asserts that default judgment may be entered against a party as a sanction for discovery abuses. *See Regional Refuse Systems v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir.1988); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir.1990) (upholding judgment for plaintiff despite lack of order to compel because of defendant's failure to properly respond to document request until five months after deadline for discovery had expired). By ignoring the identity of its opponent, plaintiff implies that if judgment is entered against a party as a sanction, then the identity of the party is irrelevant.

■ We see some merit in each party's position; however, each party claims more ground that it can defend. Clearly, 28

---

**5.** The statute provides:

No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a

foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court....

28 U.S.C. § 1608(e).

U.S.C. § 1608(e) does not relieve foreign instrumentalities of the duty to defend cases or to obey court orders. *See Alameda v. Secretary of Health, Educ. & Welfare,* 622 F.2d 1044, 1047–48 (1st Cir.1980) (identical wording in Federal Rule of Civil Procedure 55(e) pertaining to the United States does not prohibit entry of default against the United States and does not relieve the United States from the duty to defend cases and obey court orders). On the other hand, we will not ignore the strong policy stated in the statute, as part of the Foreign Sovereign Immunities Act, of encouraging foreign states and their instrumentalities to appear before United States courts and allowing the merits of cases involving foreign sovereigns to be considered completely and carefully. *See Hester Int'l Corp. v. Federal Republic of Nigeria,* 879 F.2d 170, 175 (5th Cir.1989) (affirming district court's grant of Rule 60(b) relief); *Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1551–52 (D.C.Cir.1987) (remanding for consideration of Rule 60(b) relief); *Jackson v. People's Republic of China,* 794 F.2d 1490 (11th Cir.1986) (affirming Rule 60(b) relief under subsection (6)), *cert. denied,* 480 U.S. 917, 107 S.Ct. 1371, 94 L.Ed.2d 687 (1987). Thus, rather than following the course suggested by either party, we hold that the policy expressed in the statute and the broad divergence of cultural, governmental, and political practices between the United States and Romania are factors which should have been considered by the district court in the exercise of its discretion. *See Hester,* 879 F.2d at 175; *Practical Concepts,* 811 F.2d at 1551; *Jackson,* 794 F.2d at 1496.

■ We have recognized that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter v. Seaboard Coastline RR,* 705 F.2d 839, 845 (6th Cir.1983). "In considering a motion to set aside entry of a judgment by default a district court must apply Rule 60(b) 'equitably and liberally ... to achieve substantial justice.'" Id. at 844–45 (quoting *Blois v. Friday,* 612 F.2d 938, 940 (5th Cir.1980) (per curiam)). The decision on a Rule 60(b) motion to set aside entry of a judgment by default is controlled by three factors: "1. Whether the plaintiff will be prejudiced; 2. Whether the defendant has a meritorious defense; and 3. Whether culpable conduct of the defendant led to the default." *Id.* at 845 (quoting *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982)); *see Berthelsen v. Kane,* 907 F.2d 617, 620 (6th Cir.1990) (per curiam).

Plaintiff argues that "[t]he trial court's decision whether or not to set aside a default judgment entered as a sanction is governed by different considerations than those applicable to a default judgment entered for a defendant's non-appearance." Appellee's Brief at 14. Not only does plaintiff fail to offer any authority to support its argument, but plaintiff also fails to explain how a belated response to a discovery request is a more egregious action than a belated pleading—a context in which we have specifically applied the three-factor analysis set forth in *United Coin. See INVST Fin. Group v. Chem–Nuclear Systems,* 815 F.2d 391, 398 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Moreover, other courts have granted relief under Rule 60(b) from judgment entered as a discovery sanction. *See Kotlicky v. United States Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987) (balancing policy of finality against policy favoring determination on the merits); *United States Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979) (per curiam) (refusal to cooperate was due to confusion and ignorance); *see also United States v. Shipco General, Inc.,* 814 F.2d 1011, 1013 (5th Cir.1987) (refusing relief but applying factors similar to those in *United Coin* ). Accordingly, we hold that the *United Coin* analysis applies to this case.

■ Consequently, our first inquiry under *United Coin* concerns whether the plaintiff will be prejudiced if the judgment is vacated. In an oral ruling, the district court stated that setting aside the judgment would severely prejudice the plaintiff; however, the court failed to explain how the plaintiff would be prejudiced. In this

connection, we note that the transcript of the hearing does not reveal that the plaintiff argued that it would be prejudiced.

Plaintiff did assert at the earlier hearing on its motion for default judgment that the delay in receiving discovery materials prejudiced its ability to prepare for trial. "However, 'delay alone is not a sufficient basis for establishing prejudice.' 'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *INVST,* 815 F.2d at 398 (citations omitted) (quoting *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)). There are no assertions here of loss of evidence or collusion, and from the record it appears that as of the time of the hearing on the motion to vacate the judgment, Electro had complied with plaintiff's discovery request. Thus, we are unable to discern any prejudice to the plaintiff that cannot be overcome by proper scheduling.

■ The second factor we consider is whether Electro set forth a meritorious defense. In evaluating the asserted defense, "[l]ikelihood of success is not the measure.... [r]ather, if *any* defense relied upon states a defense good at law, then a meritorious defense has been advanced." *INVST,* 815 F.2d at 398–99 (quoting *United Coin,* 705 F.2d at 845) (emphasis in original). The defense is sufficient if it contains " 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Id.* (quoting *Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 374 (D.C.Cir.1980)). "The key consideration is 'to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.' " *Id.* (quoting 10 C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure,* § 2697 at 531 (1983)). Moreover, we construe ambiguous or disputed facts in the light most favorable to the defendant. *INVST,* 815 F.2d at 398.

At the hearing on Electro's Rule 60(b) motion, the district court refused to hear any evidence going to Electro's defenses.

In a similar vein, plaintiff argues in its brief to this court that the merits of the case are not to be considered in a Rule 60(b) motion. In fact, plaintiff asks this court to "impose sanctions on appeal, including costs and fees, for Defendant's frivolous attempt to raise issues on appeal which are barred." Appellee's Brief at 26. Since the defendant's chance of presenting a meritorious defense is a factor that must be considered in granting or denying a Rule 60(b) motion, we find absolutely no merit in plaintiff's position that the merits cannot be considered, and we are surprised that this argument prevailed in the district court.

■ The district court's failure to consider the defenses raised does not preclude this court from considering them. See *INVST,* 815 F.2d at 398. Among the defenses that have been raised by Electro in this action are denials of any acts of monopolization, conspiracy or illegal tying. Electro has also asserted that its total volume of trade in the field (approximately .7 percent of the light bulb market) is insufficient as a matter of law to pose any threat of monopolization. Since the district court refused to hear any evidence going to the merits of this defense, we will give the benefit of the doubt to the defendant.

We now turn to Electro's argument that all disputes involved in this litigation properly belong in arbitration. One possible problem with Electro's arbitration argument is that the district court rejected the argument in ruling on Electro's motion to dismiss, and that ruling is not squarely before this court. However, upon remand, we see nothing to preclude the district court from reconsidering its ruling on the arbitration issue. See *Hester,* 879 F.2d at 175 (district court properly granted relief from judgment so that it could reconsider its jurisdiction in an adversary proceeding); *Jackson,* 794 F.2d at 1496 n. 3 (same).

■ On language that is not unlike the language in the arbitration clause in this case, the Supreme Court held that a commercial agreement between international participants required submission of alleged antitrust violations to arbitration. *Mitsu-*

*bishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The Court was persuaded to read the agreement liberally in favor of arbitration because of a "healthy regard for the federal policy favoring arbitration." *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3353. We need not render a dispositive ruling on the arbitration clause in this case to point out that the district court's duty to consider meritorious defenses, in light of *Mitsubishi Motors*, required more than a mere recitation in an earlier ruling that the antitrust claims were not claims "arising in connection with the present contract." In sum, we are persuaded that Electro asserted a potentially meritorious defense.

■ The final factor we consider is Electro's culpability. In order to be treated as culpable, "the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *INVST*, 815 F.2d at 399 (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 194 (6th Cir.1986)). Other than notice that would be imputed by virtue of the district court's docket sheet, it is not clear that Electro's counsel knew of discovery violations until March of 1989, approximately five months before the entry of the default judgment. Although it is true that the request for document production was pending for a long period of time, Electro's culpability is lessened by the fact that prior to March of 1989 the litigation focused on issues which might have made discovery unnecessary. We also note that for several months in 1988 discovery was foreclosed while an earlier appeal was pending. Thus, Electro's failure to respond, although not commendable, falls short of showing a reckless disregard for the effect of its conduct.

Moreover, plaintiff's counsel accepted as true Electro's assertion that the delay was caused by the disarray resulting from a flood in Electro's offices and a subsequent move, and Electro's New York counsel offered a plausible explanation for the reason Electro's problem was not brought to the court's attention earlier. These problems were compounded by a language barrier plus cultural, governmental, and political differences. Thus, contrary to plaintiff's assertion that none of the criteria of Rule 60(b) have been met, we believe Electro has shown "excusable neglect" under 60(b)(1) and, arguably, "other reason[s] justifying relief" under 60(b)(6).

Our conclusion is further strengthened by the sheer size of the damage award in this case. *See Hester*, 879 F.2d at 175 (recognizing that the substantiality of the award was a factor in favor of a trial on the merits). This is especially true given that the *sole proof of damages* was an affidavit of the president of the plaintiff corporation in which he recognized that he was only able to approximate the cost of sales in computing lost profits. Moreover, the amount specified in the affidavit was later characterized as an "estimate" by plaintiff's attorney in oral arguments on the default motion. *See* J.A. 326. Any error in this "estimation" was tripled by the award of treble damages.

## III.

In summary, we recognize that Electro was not a model litigant in this case; however, the same is true of Amernational who sought to begin this case by serving process and a discovery request upon an entity other than the defendant. We also point out that the district court added to Electro's problems when it failed twice in this case to provide notice to Electro of significant events in the litigation. Even if the district court was justifiably frustrated by Electro's actions, this did not relieve the court of its duty to do substantial justice according to the factors we have identified for passing on Rule 60(b) motions for relief from judgments. Those factors, in light of the facts of this case, convince us that the district court clearly abused its discretion in denying Electro relief from the default judgment. Accordingly, the default judgment entered by the district court is VACATED, and this case is REMANDED for

further proceedings consistent with this opinion.