966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TOLEDO HOTEL INVESTORS LIMITED PARTNERSHIP, Plaintiff-Appellee,
v.
AMERICAN CONTRACT DESIGNERS, INC., et al., Defendants-Appellants.
 Nos. 91-3750, 91-3798.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1992.
 
 Before DAVID A. NELSON and SILER, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The district court ordered the principal defendant's three lawyers to pay a portion of the plaintiff's attorney fees after the defendant filed a meritless motion to vacate a default judgment. The denial of the motion to vacate has already been affirmed by this court, and now two of the defendant's lawyers appeal the award of sanctions. The plaintiff has cross-appealed, challenging the district court's decision to award less than the amount requested. Finding that it was an abuse of discretion to require the appellant lawyers to pay attorney fees, we shall reverse the award.
 
 
 2
 * The plaintiff, Toledo Hotel Investors Limited Partnership, brought an action for breach of contract, misrepresentation and fraud against Milton Reiner, American Contract Designers, Inc. (a company wholly owned by Milton Reiner), and Melanie Reiner, a vice president of American Contract Designers. American Contract Designers had filed for bankruptcy, and the action was pursued primarily against Mr. Reiner.
 
 
 3
 Mr. Reiner attempted to avoid service of process, but Toledo eventually succeeded in effecting service on him some six months after commencement of the suit. Mr. Reiner never responded to the complaint, and Toledo applied for entry of a default.
 
 
 4
 Upon receiving notice of the application for default, Mr. Reiner asked his daughter, Lori Reiner, to represent him. Lori Reiner was an attorney at the firm of Bennett, Bricklin & Saltzburg. Because Mr. Reiner was financially unable to retain other counsel, the firm agreed, as it had once before, to represent Mr. Reiner gratis.
 
 
 5
 Lori Reiner took no action until after default had been entered. At that point she filed an entry of appearance and was granted permission to appear pro hac vice. Although she began preparation of a motion to vacate the default, she never filed such a motion.
 
 
 6
 Ms. Reiner ignored correspondence relating to the case, missed two status calls, and missed a hearing scheduled to determine what the amount of the default judgment should be. Throughout this time she misrepresented her efforts to her father and her law firm. At the end of 1988, after a hearing on damages, the district court entered judgment against Mr. Reiner for more than $1 million. Ms. Reiner filed an appeal on behalf of her father, and this court affirmed the default judgment.
 
 
 7
 Lori Reiner eventually admitted to her father and her law firm that she had never opposed the entry of default. At that point Messrs. Saltzburg and Bricklin, two partners at the firm, took over the case. They filed a motion to vacate, signed by Mr. Saltzburg, asserting that both Milton and Lori Reiner had been emotionally incapable of defending the lawsuit. The motion was supported by affidavits of Milton Reiner, Lori Reiner, and Dr. Howard Green, Milton Reiner's board-certified psychiatrist. Dr. Green's affidavit, which had been prepared by Lori Reiner, said that Milton Reiner had been suffering since before commencement of the lawsuit from "major depression," an illness that rendered him "incapable of fully comprehending, appropriately handling, and coping with" negative situations such as this lawsuit.
 
 
 8
 Toledo deposed the three affiants, and their testimony made it clear that Mr. Reiner's illness was one characterized by "exacerbations and remissions," and that he was in remission during the period relevant to this case. Toledo filed an opposition to the motion to vacate, and a reply brief signed by Mr. Bricklin was filed on behalf of Mr. Reiner. The reply withdrew the Green affidavit, which the district court characterized as "false and misleading," and abandoned the theory that Milton Reiner had been emotionally incapable of defending the lawsuit. Instead, the reply brief cited Mr. Reiner's poor financial condition as a reason why he had failed to defend the lawsuit. The only evidence offered in support of this newly-advanced theory was a statement made by Mr. Reiner during his deposition that at some time in 1989 he had only $800 in his checking account. Mr. Bricklin did have personal knowledge, however, of the circumstances that led the firm to represent Mr. Reiner without a fee.
 
 
 9
 The district court denied the motion to vacate, finding that Mr. Reiner had unequivocally displayed an intention to thwart judicial proceedings. We affirmed the district court's denial of the motion in an unpublished opinion. Toledo Hotel Investors Ltd. Partnership v. American Contract Designers, Inc., No. 90-3807, 1991 WL 119273, 1991 U.S.App. LEXIS 14862 (6th Cir. July 1, 1991) (per curiam), cert. denied, 112 S.Ct. 869 (1992).
 
 
 10
 The district court further found that sanctions were appropriate, and the court instructed Toledo to submit a brief outlining the amount of sanctions and identifying the persons against whom the defendant thought they should be imposed. Toledo requested $47,507.44, representing all attorney fees and expenses incurred in connection with the case. Mr. Bricklin, Mr. Saltzburg, and Ms. Reiner submitted an opposing memorandum supported by affidavits.
 
 
 11
 The district court concluded that expenses incurred prior to the motion to vacate and expenses associated with the appeal to this court should be excluded. The court then reduced the remaining attorney fees to 75 percent of the amount requested, on the ground that Toledo had resisted the motion more vigorously than necessary. The district court also reduced the amount requested for time spent preparing the memorandum outlining the sanctions request. A total of $28,664.40 was awarded against the three attorneys: $4,321.50 against Mr. Bricklin and $12,171.45 each against Mr. Saltzburg and Ms. Reiner.
 
 
 12
 Messrs. Bricklin and Saltzburg appeal the awards against them; Lori Reiner has not appealed. Toledo cross-appeals.
 
 II
 
 13
 Rule 11, Fed.R.Civ.P., provides in pertinent part as follows:
 
 
 14
 "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."
 
 
 15
 All aspects of a district court's decision to impose Rule 11 sanctions are reviewed under an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 L.Ed.2d 359 (1990). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." Amernational Ind., Inc. v. Action-Tungsram, Inc., 925 F.2d 970, 975 (6th Cir.), cert. denied, 111 S.Ct. 2857 (1991). A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Cooter & Gell v. Hartmarx, 110 L.Ed.2d at 382.
 
 
 16
 The proposition advanced here is that the motion to vacate was not well grounded in law or fact and that a reasonable inquiry would not have supported the belief that it was. Mr. Saltzburg signed this motion without having spoken with Dr. Green, the psychiatrist whose affidavit was central to the theory of excusable neglect. Toledo argues that Mr. Saltzburg's reliance on Dr. Green's sworn affidavit was unreasonable. We disagree.
 
 
 17
 It is true the affidavit had been drafted by Lori Reiner, an individual whom the attached motion argued was emotionally incapable of handling her father's case. Nonetheless, the affidavit bore Dr. Green's notarized signature--and regardless of who the scrivener happened to be, there is nothing in the record to suggest that Mr. Saltzburg had reason to suppose that Dr. Green would swear to something that was not true. Mr. Saltzburg had no duty to ask Dr. Green if he had been prevaricating when he executed his affidavit before a notary public.
 
 
 18
 After Toledo filed its response to the motion to vacate, the defendant filed a reply, signed by Mr. Bricklin, raising a new theory as to why the default judgment should be vacated. This theory, impecuniousness, was unsupported by the record, and the district court properly rejected it.
 
 
 19
 The fact remains, however, that Mr. Bricklin had reason to believe that Mr. Reiner was impecunious. Bricklin understood that Reiner's financial situation had prevented him from retaining other representation, after all, and Bennett, Bricklin and Saltzburg undertook the representation pro bono on that understanding. We express no opinion whether the impecuniousness argument could have prevailed if it had been timely raised and properly supported. We are firmly convinced, however, that under the facts of this case Rule 11 sanctions should not have been imposed against Messrs. Bricklin and Saltzburg.
 
 
 20
 The order of the district court is REVERSED insofar as it awards sanctions against the two appellants.