19 F.3d 1435
 38 ERC 1690
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WASTE CONVERSION, INC., Defendant-Appellant,
v.
Frank J. KELLEY, Attorney General of the State of Michigan;
and Frank J. Kelley, ex rel.; Michigan Natural Resources
Commission; David F. Hales, Director of the Michigan
Department of Natural Resources, Plaintiffs-Appellees.
 No. 92-2365.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1994.
 
 Before: KENNEDY, MARTIN, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Waste Conversion, Inc. ("WCI") appeals the district court's decision denying WCI's motion to vacate a consent judgment under Fed.R.Civ.P. 60(b)(6). WCI seeks a refund of money paid to Appellee, the State of Michigan, pursuant to the consent judgment, arguing that the invalidity of the federal and state regulations providing the basis for the consent judgment warrant relief under Rule 60(b)(6).
 
 
 2
 For the reasons stated below, we affirm the decision of the district court.
 
 I.
 
 3
 WCI operates as a marketing agent for companies engaged in transporting and disposing of hazardous wastes in Michigan. Wayne Disposal, Inc. ("Wayne Disposal"), one of WCI's clients, operates hazardous and nonhazardous waste disposal facilities in Belleville, Michigan. In 1984, WCI entered into an agreement to act as exclusive marketing agent in six northeastern states for Wayne Disposal.
 
 
 4
 In November 1985, Wayne Disposal began accepting ash and scrubber lime sludge byproduct waste streams from a hazardous waste incinerator operated by Rollins Environmental Services in Bridgeport, New Jersey. Until it began shipping its waste to Wayne Disposal, Rollins had shipped the waste to a facility in Ohio for disposal as hazardous waste. However, in a waste characterization report prepared by WCI and forwarded to Wayne Disposal, WCI characterized this same waste as "nonhazardous nonregulated." On the basis of this report, Wayne Disposal began accepting Rollins's waste and disposing it as nonhazardous waste. Each waste shipment from Rollins to Wayne Disposal was accompanied by a manifest, prepared by WCI, identifying the waste as nonhazardous. Disposal of the Rollins waste as nonhazardous produced a significant savings per cubic yard in disposal costs as compared to disposal of such waste as hazardous waste. In all, Wayne Disposal received approximately 600 shipments of incinerator ash and scrubber lime sludge from Rollins's Bridgeport facility, totaling approximately 12,000 cubic yards.
 
 
 5
 The Michigan Department of Natural Resources became aware of these activities, and, in April 1989, notified WCI and Rollins that it would commence a civil action against WCI and Rollins for the illegal manifesting and disposal of hazardous waste at a nonhazardous waste landfill. The complaint sought penalties, declaratory and injunctive relief, natural resource damages, and costs under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Secs. 6901-6992k, the Michigan Hazardous Waste Management Act ("MHWMA"), M.C.L. Secs. 299.501-.551, the Michigan Environmental Protection Act, M.C.L. Secs. 691.1201-.1207, and the common law. WCI subsequently entered into settlement negotiations with the State. On August 23, 1989, WCI and the State voluntarily entered into a consent judgment whereby WCI paid Michigan $500,000 in full settlement of Michigan's claims and the complaint was dismissed with prejudice.
 
 
 6
 RCRA creates a comprehensive program for the management of hazardous waste from generation to disposal. Pursuant to RCRA, the United States Environmental Protection Agency ("EPA") promulgated regulations identifying hazardous waste characteristics and listing specific hazardous wastes. As part of this process, the EPA issued regulations defining hazardous waste to include any solid waste generated from the treatment, storage, or disposal of a listed hazardous waste (the "derived-from rule"), 40 C.F.R. Secs. 261.3(c)(2)(i), (d)(2), as well as mixtures of one or more listed hazardous wastes and solid wastes (the "mixture rule"), 40 C.F.R. Sec. 261.3(a)(2)(iv).
 
 
 7
 On the state level, Michigan, through the MHWMA, has created a program for the comprehensive management of hazardous waste that closely resembles the federal system established by RCRA. Regulations promulgated pursuant to the MHWMA include provisions very similar to the federal mixture and derived-from rules. 1985 Annual Admin.Code Supp.R. 299.9202(1)(c) (mixture rule), (3) (derived-from rule).
 
 
 8
 Michigan's complaint against WCI rested, in part, on the classification of the ash and scrubber lime sludge waste streams as hazardous waste under the state and federal derived-from rules. However, subsequent to the entry of the consent judgment, Shell Oil Co. v. EPA, 950 F.2d 741, 752 (D.C.Cir.1991), invalidated the EPA derived-from and mixture rules on the grounds that, in promulgating the rules, the EPA failed to give sufficient notice and opportunity for comment, as required by the Administrative Procedure Act, 5 U.S.C. Sec. 553(b). Following Shell Oil and pending final promulgation consistent with the public notice and comment required by that decision, the EPA repromulgated the derived-from rule on an interim basis. See 57 Fed.Reg. 7,628 (March 3, 1992).
 
 
 9
 In April 1992, WCI filed a motion for relief from the 1989 consent judgment pursuant to Fed.R.Civ.P. 60(b)(6) in the district court. It asked the court to vacate the consent judgment and to require Michigan to refund the $500,000 that WCI paid to Michigan pursuant to the consent judgment. WCI based its motion for relief on the Shell Oil decision, claiming that Shell Oil, in addition to invalidating the federal derived-from rule, invalidated the Michigan derived-from rule as the Michigan rule was based on the federal rule. The invalidity of the federal and stae rules, in WCI's view, eliminated the classification of the Rollins waste as hazardous and, as a result, eliminated the basis of Michigan's original complaint against WCI.
 
 
 10
 The district court denied WCI's motion for three reasons: (1) WCI's challenge to the Michigan rule was untimely; (2) the Michigan derived-from rule was promulgated consistent with the Michigan Administrative Procedures Act ("MAPA"), M.C.L. Secs. 24.201-.315; and (3) in addition to the RCRA and MHWMA claims, Michigan's original complaint also raised claims based on the common law and other statutory law.
 
 II.
 
 11
 Rule 60(b) of the Federal Rules of Civil Procedure provides, in part, that
 
 
 12
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the judgment.
 
 
 13
 "The decision to grant or deny ... motions under Rule 60(b) is discretionary with the district court." Davis v. Jellico Community Hosp., Inc., 912 F.2d 129, 132-33 (6th Cir.1990) (citations omitted). Therefore, the district court's decision denying WCI's motion for relief from the consent judgment is reviewed for an abuse of discretion. Id.; Amernational Indus., Inc. v. Action-Tungsram, Inc., 925 F.2d 970, 975 (6th Cir.), cert. denied, 111 S.Ct. 2857 (1991); In re Pacific Far East Lines, Inc., 889 F.2d 242, 245 (9th Cir.1989). A finding of abuse of discretion requires "a definite and firm conviction that the trial court committed a clear error of judgment." Davis, 912 F.2d at 133 (citation omitted).
 
 
 14
 The consent judgment entered into by WCI and Michigan constitutes a final judgment for purposes of Rule 60(b)(6), and the district court has the power to modify the consent judgment. See System Federation No. 91 Ry. Employees' Dep't v. Wright, 364 U.S. 642, 646 (1961). However, relief under Rule 60(b)(6) is available only to achieve substantial justice in "exceptional or extraordinary circumstances." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir.1989); Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990); see also Klaprott v. United States, 335 U.S. 601 (1949), and requires that the moving party show that, absent relief, extreme and undue hardship will result. Olle, 910 F.2d at 365 (citation omitted); Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1984). Given the unusual nature of the remedy provided by Rule 60(b)(6), the trial court is necessarily left with "especially broad" discretion. Hopper, 867 F.2d at 294.
 
 
 15
 As an initial matter, the remedy provided by Rule 60(b)(6) is exclusive of the relief provided in subsections (1) through (5) of Rule 60(b); therefore, a proper motion under Rule 60(b)(6) should not fall into the circumstances enumerated in subsections (1) through (5). Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 n. 11 (1988). "Courts ... must apply subsection (b)(6) [of Rule 60] only 'as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present.' " Olle, 910 F.2d at 365 (quoting Hopper, 867 F.2d at 294). WCI's Rule 60(b)(6) motion meets this requirement in that it is based on reasons not covered by subsections (1) through (5).
 
 
 16
 WCI argues that the decision in Shell Oil warrants the extraordinary remedy provided by Rule 60(b)(6). Essentially, WCI contends that the invalidation of the federal derived-from rule provides sufficient basis for vacating the 1989 consent judgment. To support its position, WCI relies on several cases granting Rule 60(b)(6) relief from consent decrees because of changes to the underlying legal bases of the original decrees. See Theriault v. Smith, 523 F.2d 601, 602 (1st Cir.1975); Jordan v. School District, 548 F.2d 117, 122 (3d Cir.1977); Williams v. Butz, 843 F.2d 1335 (11th Cir.), cert. denied, 488 U.S. 956 (1988); United States v. City of Fort Smith, 760 F.2d 231, 233 (8th Cir.1985). WCI particularly directs this court to the Supreme Court's decision in System Federation, where the Court held that the petitioner was entitled to relief from a consent decree under Rule 60(b)(6) because of subsequent statutory changes. 364 U.S. at 652.
 
 
 17
 A change in controlling law, however, does not automatically provide grounds for relief under Rule 60(b)(6). See W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc., 977 F.2d 558, 563 (Fed.Cir.1992) (intervening change in patent law did not constitute extreme hardship or prejudice justifying modification of consent order under Rule 60(b)(6)); Bailey v. Ryan Stevedoring Co., Inc., 894 F.2d 157, 160 (5th Cir.1990) (change in decisional law by Supreme Court does not constitute exceptional circumstances justifying relief under Rule 60(b)(6)). System Federation and the courts of appeals decisions that WCI mentions all involve consent decrees that were injunctive in nature;[1] in contrast, the consent judgment in this case involved only monetary damages. Considering the underlying rationale of Rule 60(b)(6), this factual distinction sets the present case apart from those put forth by WCI. In examining motions for relief under Rule 60(b)(6), courts look to see if extreme and undue hardship would result in the absence of relief. Olle, 910 F.2d at 365. This standard contemplates the continuing hardship that results from a consent decree that is injunctive in nature, and WCI's payment of money damages pursuant to the consent judgment simply does not rise to the level of an excessive burden or hardship warranting the extraordinary relief provided by Rule 60(b)(6).
 
 
 18
 The Third Circuit has made just such a distinction between money judgments and injunctive relief. We find this distinction persuasive. In In re Fine Paper Antitrust Litigation, 840 F.2d 188, 194 (3d Cir.1988), the court faced the question of "whether a final money judgment may be reopened [pursuant to a Rule 60(b)(6) motion] several years after the time for appeal has expired because of a favorable legal ruling in some other party's appeal." Noting that money judgments are inherently final and are not prospective in operation, the court answered the question in the negative. Id. at 194-95.[2]
 
 
 19
 Ultimately, the decision to grant or deny a motion for relief under Rule 60(b)(6) is necessarily a fact-based inquiry that requires the court to consider several factors. Examining the facts of this case in light of the competing policies of the finality of judgments and the requirement that substantial justice be done in light of all of the facts, Griffin v. Swim-Tech Corp., 722 F.2d at 680, we find that the district court did not abuse its discretion in denying WCI's motion for relief under Rule 60(b)(6).
 
 
 20
 Because WCI is not entitled to relief under Rule 60(b)(6) from the consent judgment, we need not reach the question of the timeliness of WCI's Rule 60(b)(6) motion or the more complex issue of the effect of Shell Oil on Michigan's derived-from rule. Regarding these matters, we express no opinion as to the district court's findings.
 
 
 21
 Finding no abuse of discretion, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 The Theriault decision vacated, in response to a motion under Fed.R.Civ.P. 60(b)(5), a consent decree that had required the defendant to grant disputed AFDC benefits, 523 F.2d at 602. Jordan allowed modification of a consent decree setting out various school board procedures for disciplinary actions, 548 F.2d at 118-19. Williams involved a consent decree requiring the appellant to follow certain procedures in foreclosures, 843 F.2d at 1336. United States v. City of Fort Smith concerned a consent decree establishing target effluent limits for appellant, 760 F.2d at 232
 
 
 [2]
 WCI refers to the Ninth Circuit's decision in In re Pacific Far East Lines, Inc., granting Rule 60(b)(6) relief from a consent judgment that did not provide for prospective relief. 889 F.2d at 250. In Pacific Far East Lines, the Ninth Circuit granted a bankruptcy trustee a refund of fees paid into a bankruptcy settlement fund. Id. The refund was based on a statutory change enacted after the trustee's payment to the settlement fund; the statutory change placed a cap on such funds well below the amount that the trustee had paid. Id. at 243. Despite the fact that Pacific Far East Lines involved a consent judgment with no prospective application, its outcome is not dispositive of the present case. In Pacific Far East, the court found that the statutory change constituted "extraordinary circumstances" as required by Rule 60(b)(6), because the intervening statutory change "came as a complete surprise." Id. at 250. In contrast, the administrative challenges to EPA's derived-from rule had been ongoing since the early 1980s. See Shell Oil, 950 F.2d at 746